UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | **:** | CASE NO. 22-59972-pwb |
| | **:** | |
| Shatoya Shanay Brown, | **:** | CHAPTER 7 |
| Debtor. | **:** | |
| _____ | **:** | JUDGE BONAPFEL |
| | **:** | |
| American Residential Leasing | **:** | |
| Company, LLC, | **:** | |
| | **:** | |
| Movant, | **:** | CONTESTED MATTER |
| vs. | **:** | |
| | **:** | |
| Shatoya Shanay Brown, | **:** | |
| Debtor. | **:** | |
| | **:** | |
| Michael J. Bargar, | **:** | |
| | **:** | |
| Trustee, | **:** | |
| | **:** | |
| Respondents. | **:** | |
| _____ | **:** | |

## NOTICE OF HEARING

**PLEASE TAKE NOTICE** that Movant American Residential Leasing Company, LLC, has filed a *MOTION FOR RELIEF FROM STAY* and related papers with the Court seeking an Order Granting Motion for Relief from Stay.

**PLEASE TAKE FURTHER NOTICE** that the Court will hold an initial telephonic hearing for announcements on the *Motion for Relief from Stay* at the following number: (833) 568-8864 Meeting ID 161 794 3084, at 10:15 a.m., on January 4, 2023, in Courtroom 1401, U.S. Courthouse, 75 Ted Turner Drive, S.W., Atlanta, GA 30303.

Matters that need to be heard further by the Court may be heard by telephone, by video conference, or in person, either on the date set forth above or on some other day, all as determined by the Court in connection with this initial telephonic hearing. Please review the "Hearing Information" tab on the judge's webpage,

which can be found under the "Dial-in and Virtual Bankruptcy Hearing Information" link at the top of the webpage for this Court, www.ganb.uscourts.gov for more information.

Your rights may be affected by the court's ruling on these pleadings. You should read these pleadings carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.) If you do not want the court to grant the relief sought in these pleadings or if you want the court to consider your views, then you and/or your attorney must attend the hearing. You may also file a written response to the pleading with the Clerk at the address stated below, but you are not required to do so. If you file a written response, you must attach a certificate stating when, how and on whom (including addresses) you served the response. Mail or deliver your response so that it is received by the Clerk at least two business days before the hearing. The address of the Clerk's Office is Clerk, U. S. Bankruptcy Court, Suite 1340, 75 Ted Turner Drive, Atlanta Georgia 30303. You must also mail a copy of your response to the undersigned at the address stated below.

If a hearing on the motion for relief from the automatic stay cannot be held within thirty (30) days, Movant waives the requirement for holding a preliminary hearing within thirty days of filing the motion and agrees to a hearing on the earliest possible date. Movant consents to the automatic stay remaining in effect until the Court orders otherwise.

Dated: December 8, 2022

O'KELLEY & SOROHAN
ATTORNEYS AT LAW, LLC

*/s/ Joseph P. Farrell*
Joseph P. Farrell
Georgia Bar No. 255864
*Attorney for Movant*

2170 Satellite Blvd., Ste. 375
Duluth, GA 30097
T: (770) 252-0057
E: jfarrell@oslawllc.com

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | **:** | CASE NO. 22-59972-pwb |
| | **:** | |
| Shatoya Shanay Brown, | **:** | CHAPTER 7 |
| Debtor. | **:** | |
| _____ | **:** | JUDGE BONAPFEL |
| | **:** | |
| American Residential Leasing | **:** | |
| Company, LLC, | **:** | |
| | **:** | |
| Movant, | **:** | CONTESTED MATTER |
| vs. | **:** | |
| | **:** | |
| Shatoya Shanay Brown, | **:** | |
| Debtor. | **:** | |
| | **:** | |
| Michael J. Bargar, | **:** | |
| | **:** | |
| Trustee, | **:** | |
| | **:** | |
| Respondents. | **:** | |
| _____ | **:** | |

## **MOTION FOR RELIEF FROM STAY**

COMES NOW, American Residential Leasing Company, LLC ("Movant"),

by and through its counsel of record, and shows this Court the following:

1.

Shatoya Shanay Brown, ("Debtor"), having filed a voluntary petition pursuant

to 11 U.S.C. § 1301, *et seq.*, is subject to the jurisdiction of this Court.

3

2.

This Court has jurisdiction over this matter pursuant to 11 U.S.C. § 362.

3.

This Motion is filed pursuant to 11 U.S.C. § 362(d). This is a core proceeding

pursuant to 28 U.S.C. § 157(b)(2)(G).

4.

Movant is the owner and landlord of certain real property located at 4711

Plantation Mill Trail, Buford, GA 30519 (hereinafter referred to as "Subject

Property") currently leased to Debtor pursuant to a Rental Agreement at a rental rate

of $1,695.00 per month, plus a $9.99 utility service fee, $228.83 month to month

charge, and all utilities which vary from month to month ("Lease"). A true and

correct copy of the Lease is attached hereto as **Exhibit "A"** and incorporated herein

by reference. A late fee of $75.00 is assessed if rent is not paid in full by the fifth

(5th) day of each month. Debtor has not filed a Schedule G with her petition.  Debtor

listed the Subject Property as their residence in the voluntary petition [Doc. 1, Pg.

2].

5.

Debtor defaulted under the terms of the Lease by failing to pay the monthly

rent, fees, utilities, and late fees as required beginning in July 2022, through the date

of this Motion. As of the date of this Motion, the unpaid rent, fees, and charges owed

to Movant is $13,806.09. A true and correct copy of the resident ledger for the

Subject Property is attached hereto as **Exhibit "B"** and incorporated herein by reference. Movant further alleges that Debtor will continue to incur arrearages in both rent and late fees.

6.

Movant seeks to dispossess Debtor and any other occupants from the Subject Property but is unable to exercise its state law remedies and pursue state law dispossessory proceedings as the automatic stay remains in effect.

7.

Because Movant is the owner of the Subject Property but unable to dispossess occupants of said Subject Property, Movant is not adequately protected and shows that there is cause for relief from the automatic stay.

8.

Further, because there may be little or no equity in the Subject Property which could benefit the Estate, the Trustee's interest should be deemed abandoned and the stay should be lifted with regard to Movant to allow it to proceed with the dispossessory proceedings.

WHEREFORE, Movant prays for the following relief:

(A)    An Order lifting the automatic stay, authorizing Movant to exercise its rights to take possession and enjoy use of that Subject Property which it currently owns;

5

Document     Page 6 of 48

(B)    That the relief granted herein be made binding in the event of conversion to another Chapter of the Bankruptcy Code;

(C)    That the Court validate any action(s) taken after bankruptcy was filed;

(D)    That the Court waive the 14-Day Stay of Bankruptcy Rule 4001(a)(3);

(E)    That Movant recover its reasonable costs and attorney's fees for having to file this Motion; and

(F)    For such other and further relief as the Court deems just and equitable.

Dated: December 8, 2022.

O'KELLEY & SOROHAN
ATTORNEYS AT LAW, LLC

*/s/ Joseph P. Farrell*
Joseph P. Farrell
Georgia Bar No. 255864
2170 Satellite Blvd., Ste. 375
Duluth, GA 30097
T: (770) 252-0057
E: jfarrell@oslawllc.com
*Attorney for Movant*

## CERTIFICATE OF SERVICE

I hereby certify that on December 8, 2022, I electronically filed the foregoing *Notice of Hearing* and *Motion For Relief From Stay* with the Clerk of Court using the CM/ECF system which will automatically send an e-mail notification of such filing to the parties or attorneys of record. I have also on this day caused a copy of the pleading to be placed in the first-class United States mail, postage prepaid, addressed to the following recipients not participating in the CM/ECF system as follows:

Shatoya Shanay Brown
4711 Plantation Mill Trail
Buford, GA 30519
*Debtor (Pro Se)*

Michael J. Bargar
Rountree Leitman Klein & Geer LLC
Century Plaza
2987 Clairmont Road, Suite 350
Atlanta, GA 30329
*Trustee*

Office of the United States Trustee
362 Richard Russell Building
75 Ted Turner Dr. SW
Atlanta, GA 30303
*U.S. Trustee*

Dated: December 8, 2022.

O'KELLEY & SOROHAN
ATTORNEYS AT LAW, LLC

*/s/ Joseph P. Farrell*
Joseph P. Farrell
Georgia Bar No. 255864
2170 Satellite Blvd., Ste. 375
Duluth, GA 30097
T: (770) 252-0057
E: jfarrell@oslawllc.com
*Attorney for Movant*

# EXHIBIT A

Property ID: ga16178
Tenant ID: t0165898
Commencement Date: March 14, 2020



**RENTS AND OTHER PAYMENTS DUE UNDER THE LEASE**

| MONTHLY RENT AND FEES | |
|---|---|
| Rent: | $1,695.00 |
| Pet Rent: | $ 0.00 |
| Rent Tax: | $0.00 |
| Other: | $0.00 |
| Total Rent (collectively, "Rent"): | $1,695.00 |
| **Other Monthly Amounts (if applicable)** | |
| Late Fee:               *See Section 5(a)* | $75.00 Flat Amount |
| NSF Fee:                *See Section 5(b)* | *Various* |
| Notice Fee:             *See Section 5(c)* | *Various* |
| Legal Fee:              *See Section 5(d)* | Various |
| Utilities:              *See Section 6* | Varies by usage |
| Trip Fee (minimum):     *See Section 9(c)* | $75 |

| CHARGES, FEES and DEPOSITS DUE PRIOR TO MOVE IN | |
|---|---|
| **At or Before Lease Signing** | |
| Security Deposit: | $1,695.00 |
| Refundable Key Deposit(s): | $0.00 |
| Refundable Pet Deposit(s): | $0.00 |
|   Less amount paid at time of application: | $1,695.00 |
| Other: | $0.00 |
| Deposit Balance: | $1,695.00 |
| ***PAYMENTS DUE PRIOR TO OCCUPANCY MUST BE PAID IN CERTIFIED FUNDS*** | |
| **No later than 24 Hours Prior to Move-In** | |
| Prorated Rent:      March 14, 2020 thru March 31, 2020 | $984.19 |
| First Full Month's Rent:      April, 2020 | $1,695.00 |
| Non-Refundable Pet  Fee: | $0.00 |
| Non-Refundable Administrative Fee: | $100.00 |
| Non-Refundable Cleaning Fee: | $0.00 |
| Other: | $0.00 |
| Total: | **$1,084.19** |
| ***PAYMENTS DUE PRIOR TO OCCUPANCY MUST BE PAID IN CERTIFIED FUNDS TO THE LOCAL OFFICE*** | |

**Payment Methods**:

1.  Electronic payment via tenant portal (https://americanhomes4rent.securecafe.com/residentservices/apartmentsforrent/userlogin.aspx).

2.  Cashier's check, money order, personal check, or bill pay check:
    a.  Via Regular Mail:            P.O. Box 95698, Las Vegas, NV 89193
    b.  Via Overnight Mail:        Attn: Accounts Receivable, 280 Pilot Road, Las Vegas, NV 89119

3.  CASH PAYMENTS ARE **NOT** ACCEPTED.

---

This document is digitally signed using RENTCafe eSignature services. Document ID: 10303005

Property ID: ga16178
Tenant ID: t0165898
Commencement Date: March 14, 2020



Term from March 14, 2020  ("Commencement Date") to March 13, 2021 ("Expiration Date").

AH4R Management - GA, LLC      ("Agent"), as agent for American Residential Leasing Company, LLC ("Owner" and together with Agent, collectively "Landlord").

Property Management Office Address: 2 Sun Court, Suite 210 Norcross, GA 30092 ("Address for Notice").

Property Address: 4711 Plantation Mill Trail Buford, GA 30519 (the "Property").

Name of Financial Institution where the Security Deposit will be located (only applicable for FL, GA, KY, NC, WA, or TN):
City National Bank 8641 Wilshire Blvd., Suite 101 - Beverly Hills, CA 90211.
Referring Broker:   (if YES, name of referring Broker:  ).

**Tenants/Co-Signers/Guarantors (individually, jointly and collectively "Tenant"):**

| Name | Email | Phone | T/O/C/G |
|------|-------|-------|---------|
| Shatoya Hayes | | | T |
| Marie Lofton | | | T |
| | | | |
| | | | |
| | | | |

**Other Occupants (collectively, "Occupant"):**

| Name | Age | Relationship | Name | Age | Relationship |
|------|-----|--------------|------|-----|--------------|
| | | | | | |
| | | Other | | | |
| | | Other | | | |
| | | | | | |
| | | | | | |

**Pet(s):**

| Type/Breed | Color | Weight | Name |
|------------|-------|--------|------|
| Dog-Terrier | Brown | 10.00 | Cupcake |
| | | | |
| | | | |

**Vehicle Information:**

| Year | Make | Model | License Plate |
|------|------|-------|---------------|
| 2013 | BMW | X1 | |
| 2019 | GMC | Acadia | |
| | | | |
| | | | |

**Addenda, which if checked below are hereby incorporated by reference and made part of this Lease (check all that apply):**

| | | | |
|---|---|---|---|
| X | Security Deposit Addendum - GA | X | AH4R Privacy Policy |
| X | State-Specific Disclosures- GA | | Homeowners Association (HOA) Documents |
| X | Utilities Provider Addendum | | Articles |
| X | Bed Bugs Notice | | Bylaws |
| X | OFAC Compliance Addendum | | Covenants, Conditions and Restrictions (CC&Rs) |
| | Key Addendum | | HOA Rules and Regulations |
| | Rent Tax Addendum | | Other HOA Documents: |
| X | Landlord's Rules and Regulations | | Other Addenda: |

This document is digitally signed using RENTCafe eSignature services. Document ID: 10303005

Property ID: ga16178
Tenant ID: t0165898
Commencement Date: March 14, 2020

**Landlord and Tenant (collectively the "Parties") agree that Tenant will lease the Property from Landlord on the terms and conditions contained in this lease, which will include each of the Addenda checked above and found at www.americanhomes4rent.com/addenda, Landlord's Rules and Regulations found at www.americanhomes4rent.com/rulesandregulations, and any additional terms and conditions posted on AH4R's website (collectively, this "Lease"). By signing this Lease, Tenant acknowledges and agrees that Tenant has read, understood, and accepted all of the terms and conditions of this Lease and that any Addenda, Rules and Regulations, and/or terms and conditions so posted on AH4R's website are subject to change from time to time by Landlord in its sole discretion, upon reasonable notice to Tenant.**

**1    USE:** Tenant may use the Property as a private residence only. The only person(s) Tenant may permit to reside on the Property during the Term of this Lease are those listed as Tenants or Occupants on page 1.

**2    TERM:** The term of this Lease will begin on the Commencement Date and end on the Expiration Date (the "Term"), unless otherwise renewed or terminated under the terms of this Lease, by agreement of the Parties, by applicable law, or otherwise as provided in this Section 2.

a.    **MOVE-IN AND MOVE-OUT:** Landlord makes no express or implied warranties as to the Property's condition, except as noted in the Move-In Checklist provided to Tenant upon move-in, and Tenant agrees at the termination of this Lease to deliver possession of the Property back to Landlord in a clean and satisfactory condition as demonstrated by the Move-Out Request Form, normal wear and tear excepted.  In addition, Tenant will deliver to Landlord a receipt for professional carpet cleaning for all carpeted areas, and failure to do so will result in a deduction from the Security Deposit.

b.    **LANDLORD'S INABILITY TO DELIVER POSSESSION**:  Tenant acknowledges that if the Property is occupied by a prior tenant or occupant on the anticipated Commencement Date, Landlord will not be subject to any liability for its inability to deliver possession of the Property to Tenant and the validity of this Lease will not be impaired, but the Commencement Date and Expiration Date will be delayed by the number of days possession is delayed.    Notwithstanding the foregoing, if Landlord does not deliver possession of the Property to Tenant within 60 days of the original anticipated Commencement Date, this Lease will terminate and be of no further force or effect, and Landlord and Tenant will have no further obligations hereunder. In the event this Lease is so terminated pursuant to this Section 2(b), all prepaid monies will be returned to Tenant.

c.    **TENANT'S REFUSAL TO OCCUPY:** If Tenant refuses to occupy the Property after execution of the Lease, Landlord will have the right to retain Tenant's Security Deposit and any and all other amounts collected prior to Tenant's occupancy of the Property, as Landlord's damages under this Lease. The Parties agree that Landlord's damages are incapable of precise calculation and result from Tenant's refusal to occupy the Property. Landlord's acceptance of Tenant's Security Deposit does not waive Landlord's right to exercise any other remedies available at law or under this Lease.

d.    **AUTOMATIC RENEWAL OR TERMINATION:** This Lease will automatically renew on a month-to-month basis at the end of the Term unless Landlord or Tenant provides written notice of termination at least 30 days before the Expiration Date of the Term.

i.    **Renewal**: Landlord may propose renewal options to Tenant prior to the expiration of this Lease or any renewal. Tenant will be required to execute a new lease, a lease addendum or other document evidencing the renewal lease terms.  If Tenant does not timely provide written notice of its election of one of the proposed renewal options or provide written notice of its election to terminate, this Lease will automatically renew on a Month-to-Month basis and the rental rate will increase to a minimum of 110% of the prior month's Rent, and the Term will continue to renew on a Month-to-Month basis until Landlord or Tenant provides written notice of termination.  The effective date of such termination will be the later of the date designated in such notice of termination and that date which is 30 days after such notice is received. Notwithstanding the foregoing, Rent may be increased at any time during the Month-to-Month tenancy upon 30 days' prior written notice, subject to state law.

ii.    **No Oral Notice and Time is of the Essence**: Oral notification of a Lease renewal or termination is not sufficient under any circumstances.  Time is of the essence for providing notice of renewal or termination, and strict compliance with the dates by which notice must be provided is required.

iii.    **Holdover**: Holdover is defined as the following: (1) Tenant gives notice to vacate and continues to occupy the Property after such indicated date; or (2) Landlord gives notice of non-renewal or notice to vacate and Tenant continues to occupy the Property after such indicated date. Tenant will pay Holdover Rent (as defined in this Section 2(d)(iii)) for such holdover period and indemnify Landlord and Landlord's prospective new tenants of the Property for any damages, including, but not limited to, lost Rent, lodging expenses, costs of eviction, and attorneys' fees. Holdover Rent will be two times (2x) the monthly Rent, calculated on a daily basis, and will be immediately due and payable daily without notice or demand.

**3    RENT**: Tenant will pay Landlord the Rent set forth on page 1 above for the full Term of this Lease. Rent will be payable by Tenant without notice, demand, deduction, or offset, except as required by state law.  Moreover, Tenant will pay Rent in advance on or before the 1st day of each month. In addition, Tenant will pay, as Additional Rent, all sums, fees and/or charges required to be paid by Tenant under this Lease (including, but not limited to, Rent Tax (if applicable), Late Fees and NSF Fees, Utilities, Maintenance Fees, Pet Fees, Administration Fees, Cleaning Fees, Processing Fees and/or Legal Costs), whether or not such sums are specifically designated as "Additional Rent."

a.    **Certified Funds Policy**: If Tenant fails to timely pay any amounts due under this Lease or if Tenant's payment is not honored by the banking institution on which it was drawn, Landlord may require Tenant to pay such overdue amount and any subsequent Rent or other amounts due under this Lease in certified funds (e.g., cashier's check or money order). However, this Section 3(a) does not limit Landlord from seeking other remedies at law or under this Lease for Tenant's failure to make timely payments with good funds.

b.    **Application of Funds**: Regardless of any notation made by Tenant on a check or payment remittance, and subject to applicable state law, Landlord may apply funds received from Tenant as follows: first to any non-Rent obligations of Tenant under this Lease, including, but not limited to, late charges, returned payment charges, repairs,

This document is digitally signed using RENTCafe eSignature services. Document ID: 10303005

Property ID: ga16178
Tenant ID: t0165898
Commencement Date: March 14, 2020

periodic utilities, pet charges, or any administrative charges to enforce the terms of this Lease; then to unpaid portions of the security deposit; then to past- due Rent; and then to Rent then due and payable.

c.    **Acceptance of Partial Rent Payment**: Subject to state law, Tenant acknowledges and understands that Landlord's acceptance of partial rent payment will not waive Tenant's breach of this Lease or limit Landlord's rights to evict Tenant through eviction proceedings, whether filed before or after Landlord's acceptance of any such partial payment. Notwithstanding the foregoing, Landlord is not required to accept any partial payment.

**4    DEPOSITS**: On or before the execution of this Lease, Tenant must make all required Deposits noted on page 1 above (i.e., Security Deposits, Pet Deposits, Key Deposits, etc.) to Landlord. No interest or income will be paid to Tenant on the Security Deposit, unless required by state law. Landlord may place the security deposit in an interest-bearing or income-producing account and any interest or income earned will be paid to Landlord. Any refund of the Security Deposit will be made payable to all Tenants named under this Lease. Landlord is not required to return or account for any Deposits until Tenant surrenders the Property and the Tenant provides the Landlord with a forwarding address, after which Landlord will return the Security Deposit as required under state law, less any unused amounts due to Landlord plus any charges for default of Rent or other payments due under this Lease, damages (beyond normal wear and tear)

caused by Tenant to the Property, cleaning the Property or other deductions permissible under this Lease and applicable state law. Landlord will provide a written statement accounting for any and all deductions to the Deposit amounts.

**5    UNTIMELY PAYMENTS, LATE FEES AND NSF FEES**:

a.    **Late Fees**: If Landlord does not receive a Rent payment (i) in the full amount due and payable, (ii) at the designated place of payment and (iii) in the manner described on page 1 above by **11:59 PM of the 5th day of each calendar month**, Tenant will be assessed a Late Fee, which is subject to change from time to time by Landlord in its sole discretion, upon reasonable notice to Tenant. For purposes of paying Rent and/or Late Fees, the mailbox is not deemed to be Landlord's "agent for receipt" (i.e., the postmark date will not be deemed the date Landlord receives the payment). The Parties agree that Late Fees are based on a reasonable estimate of uncertain damages to Landlord that are incapable of precise calculation and result from untimely payments of Rent. Landlord's acceptance of a Late Fee does not waive Landlord's right to exercise remedies under law or equity or under Section 16 of this Lease.

b.    **NSF Fees**: Tenant must pay Landlord the NSF Fee for each payment that Tenant tenders to Landlord which is returned or dishonored by the institution on which it is drawn for any reason, plus any Late Fees, pursuant to this Section 5, until Landlord receives payment. Tenant must make any returned payment good by paying any amounts plus associated charges in certified funds. See NSF Chart at www.americanhomes4rent.com/NSFFees.

c.    **Notice Fees**: Tenant will be responsible for all costs and fees incurred by Landlord relating to each correspondence, letter, email, or notice generated for the enforcement of any term under this Lease (collectively "Notice Fee"), including, but not limited to, delinquency letters, pay or quit notices, HOA notices of violations, and municipal ordinance violation letters.

d.    **Legal Costs and Fees**: Tenant will be responsible for all costs and fees incurred by Landlord relating to Lease enforcement

and/or eviction efforts ("Legal Fee"), including, but not limited to, collection costs, collection fees, attorneys' fees, court costs, cost of service, witness fees, and prejudgment interest.

**6    UTILITIES**: Tenant is responsible for ensuring that the following utilities are available to the Property at all times during the Term: water, electricity, gas, wastewater and garbage. Before signing this Lease, it is Tenant's responsibility to determine that all such necessary utilities are available to the Property and are adequate for Tenant's use. Landlord may establish and maintain all or certain utility accounts servicing the Property (including, but not limited to, water, electricity, gas, wastewater and garbage), in Landlord's name or in its affiliate's or designee's name. The terms and conditions of utility service for the Property and maintenance of any such utility accounts will be governed by the terms set forth in the Utilities Provider Addendum, which is subject to change from time to time by Landlord in its sole discretion, upon reasonable notice to Tenant. Non-payment of utilities charges will be a Default under Section 16 of this Lease and may result in utility shut-offs.

**7    PETS**: Tenant must pay the non-refundable Pet Fee or the refundable pet deposit, and monthly pet rent (if applicable) if Tenant has listed any pets on page 2 above. Tenant is solely responsible for cleaning up after Tenant's pet(s) and for any damage caused by Tenant's pet(s).

**8    INSURANCE**: Landlord's insurance does not cover Tenant for loss of Tenant's personal property, furnishings, or belongings. As such, Landlord strongly recommends that Tenant obtain renter's insurance for casualties such as fire, flood, water damage, theft, and general liability claims. Tenant agrees to maintain insurance coverage for his/her/their vehicle(s) parked on Landlord's Property.

**9.    REPAIRS AND MAINTENANCE**: Tenant will keep and maintain the Property in a clean, safe and sanitary condition. Tenant is responsible for day to day maintenance and repairs on or about the Property, including, but not limited to pest control and Yard Maintenance, both at Tenant's own expense. For purposes of this Section 9, the "Yard" includes all lawns, shrubbery, bushes, flowers, gardens, trees, rocks or other landscaping features and foliage on or encroaching on the Property or on any easement appurtenant to the Property (but does not include any common areas that are to be maintained by any applicable homeowners' association), and "Yard Maintenance" means performing activities such as, but not limited to: mowing, fertilizing, trimming, controlling pests in the Yard, removing debris from the Yard, watering the Yard, all in accordance with all applicable state and local ordinances, laws and homeowners' association rules (if applicable). Notwithstanding the foregoing, any pool, spa or hot tub located on the Property will be maintained by Landlord (see attached Landlord's Rules and Regulations, if applicable).

a.    **Tenant Misconduct or Negligence**: Tenant will pay for any repairs to the Property required because of Tenant's actions, misuse, misconduct or negligence, all as more specifically discussed in Landlord's Rules and Regulations posted on AH4R's website.

b.    **Emergencies**: Tenant will immediately notify Landlord if any emergencies and/or need for major repairs (i.e., plumbing, electrical, fire, mechanical or other equipment problems that pose a health or safety risk) by calling the maintenance hotline, (855) 254-2447 or via American Homes 4 Rent's portal.

c.    **Repair Costs and Trip Charges**: Except as otherwise specified in this Lease, Landlord will pay to repair or remedy certain conditions on the Property only if Tenant complies with the procedures for requesting repairs as described in Landlord's Rules and Regulations posted on AH4R's website. If a repair person, scheduled and paid for by Landlord, is unable to access the Property after

This document is digitally signed using RENTCafe eSignature services. Document ID: 10303005

making arrangements with Tenant to complete the repair, Tenant will pay for any fees or charges that the repair person may charge, and in addition, Landlord may charge an administrative maintenance trip fee, which is subject to change from time to time by Landlord in its sole discretion, upon reasonable notice to Tenant.

**10.  SMOKE/CARBON MONOXIDE DETECTORS**: The Property is equipped with smoke/carbon monoxide detectors in accordance with applicable state laws. Removing, disconnecting or intentionally damaging smoke/carbon monoxide detectors or removing a battery without immediately replacing it with a working battery may subject Tenant to civil penalties and liability for damages. In addition, tampering with or removing such alarms is a Default under Section 16 of this Lease.

**11.  ALTERATIONS**: Tenant agrees not to make any alterations, modifications, or changes to the Property without Landlord's prior written consent.  This includes, but is not limited to, changing of locks; adding additional locks and deadbolts to the doors and windows; or applying wallpaper, paints or stains to woodwork, walls or floors.

**12.  LANDLORD'S RULES AND REGULATIONS**: Tenant agrees that Tenant and Tenant's guests and invitees have read, understood and agreed to abide by Landlord's Rules and Regulations which may be found at   www.americanhomes4rent.com/rulesandregulations   and any rules or covenants imposed by any applicable  homeowners' association, all of which may be subject to change from time to time.

**13.  ASSIGNMENT AND SUBLETTING**: Tenant may not assign this Lease or sublet the Property without Landlord's prior written consent, which may be given or withheld in Landlord's sole discretion.  An assignment or sublease of this Lease without Landlord's written consent is immediately voidable by Landlord.

**14.  LIABILITY**: Unless directly caused by Landlord's gross negligence or willful misconduct, Landlord is not responsible to Tenant, any occupants, or guests or invitees of Tenant for any damages, injuries, or losses to person or property caused by fire, flood, water leaks, ice, snow, hail, winds, explosion, smoke, interruption of utilities, theft, burglary, robbery, assault, vandalism, other persons, condition of the Property, environmental contaminants (e.g., carbon monoxide, asbestos, radon, lead-based paint, mold, fungus, etc.), or other occurrences or casualty losses. Tenant will promptly reimburse Landlord for any loss, property damage, or cost of repairs or service to the Property caused by Tenant, any occupants, guests or invitees of Tenant or any pets.

**15.  NOTICES**: All notices under this Lease must be in writing and are effective only when hand-delivered, sent by mail, or sent by electronic transmission:
    a.  To Tenant at the Property Address or email address provided on Page 2 above; and
    b.   To Landlord at the Address for Notice or email address provided on Page 2 above.

Tenant is responsible for timely notifying Landlord of any changes in Tenant's email address(es).

**16.  DEFAULTS**:
    a.   **Landlord Default**: If Landlord fails to comply with this Lease, Tenant may seek any relief provided by law.
    b.   **Tenant Default** If Tenant fails to comply with this Lease or fails to timely pay any amounts due under this Lease, Tenant will be deemed in immediate Default, and:
        i.   Landlord may terminate Tenant's right to occupy the Property by providing Tenant with or without written notice to vacate, pursuant to state law;

        ii.  All unpaid rents which are payable during the remainder of this Lease or any renewal period will be accelerated without notice or demand;
        iii.   Subject to state law, Tenant will be liable for:
            A.   any lost Rent;
            B.    all costs incurred in connection with reletting the Property, including, but not limited to, leasing fees/commissions, advertising fees, utility charges, and any other expenses reasonably incurred to relet the Property;
            C.    repairs needed to the Property, beyond normal wear and tear;
            D.    all costs associated with the eviction of Tenant, including, but not limited to, attorneys' fees, court costs, cost of service, witness fees, and prejudgment interest;
            E.    all collection costs incurred, including, but not limited to,  any administrative costs incurred in connection with Lease enforcement efforts; and
            F.    any other recovery to which Landlord may be entitled under this Lease, by law or equity.

        iv.    NOTE: UNPAID RENT OR OTHER AMOUNTS DUE UNDER THIS LEASE ARE REPORTABLE TO CREDIT REPORTING AGENCIES.

**17.    ADDITIONAL TENANT ACKOWLEDGEMENTS AND REPRESENTATIONS**: Tenant's statements in this Lease and in any rental application are material representations. If Tenant makes a misrepresentation in this Lease or in any rental application, Tenant will be in Default of this Lease. Each party to this Lease represents that he or she is of legal age to enter into a contract.

    **a.  Suitability**: It is Tenant's responsibility to determine, before signing this Lease, whether: (i) all services (e.g., utilities, schools, and transportation) are available and accessible to and from the Property; (ii) such services are sufficient for Tenant's needs and wishes; and (iii) Tenant is fully satisfied with the Property's condition.

    **b.  Credit Reports and Responses to Requests**: Tenant hereby consents to and agrees that Landlord will have the right from time to time to obtain an updated credit report and/or background report on Tenant at any time during the Term, at Landlord's sole cost and expense.  Furthermore, Landlord is not obligated to respond to any requests for Tenant's rental payment history from a mortgage company or lender while Tenant is in breach or Default of any terms of this Lease, and Landlord is not obligated to respond to any requests for Tenant's rental payment history from another prospective landlord (i) until Tenant has given notice of Tenant's termination of this Lease and (ii) so long as Tenant is not in breach or Default of any terms of this Lease. In addition, Landlord may charge a reasonable fee for processing any such request ("Processing Fee").  Tenant/Occupant(s) hereby authorizes Landlord to release any information regarding Tenant/Occupant(s) as may be required by law or requested by governmental authorities or agencies, law enforcement agencies, courts, or others for marketing or similar purposes in accordance with the Landlord's Privacy Policy which is posted on AH4R's website.

    **c.  Binding**: This Lease is binding upon final acceptance and execution by the Parties. READ ALL OF THE TERMS OF THIS LEASE CAREFULLY. If Tenant does not understand the effect of this Lease, Tenant should consult with an attorney before signing.

**18.  MISCELLANEOUS**:  There are no oral agreements between Landlord and Tenant. This Lease (which will include each of the Addenda listed on page 2 above and posted on AH4R's website, Landlord's Rules and Regulations posted on AH4R's website, and any additional terms and conditions posted on AH4R's website) contains the entire agreement between Landlord and Tenant regarding the Property and may not be changed except by written agreement. This Lease is binding upon and inures to the benefit of the Parties to this

This document is digitally signed using RENTCafe eSignature services. Document ID: 10303005

Property ID: ga16178
Tenant ID: t0165898
Commencement Date: March 14, 2020

Lease and their respective heirs, executors, administrators, successors, and permitted assigns.    All Tenants are jointly and severally liable for all provisions of this Lease. Any act or notice to, refund to, or signature of, any one or more of the Tenants regarding any Term of this Lease, its extension, its renewal, or its termination is binding on all Tenants executing this Lease. Landlord's past delay, waiver or non-enforcement of a Rent due date or any other right under this Lease will not be deemed to be a waiver of any other breach by Tenant or any other right of Landlord under this Lease. Should a court find any clause in this Lease unenforceable, the remainder of this Lease will not be affected and all other provisions of this Lease will remain in full force and effect. The laws of the state in which the Property is located will govern the interpretation, validity, performance, and enforcement of this Lease.

*[Signature Page to Follow]*

This document is digitally signed using RENTCafe eSignature services. Document ID: 10303005

Property ID: ga16178
Tenant ID: t0165898
Commencement Date: March 14, 2020

**LANDLORD (by Agent under Property Management Agreement):**

*Marissa Whiting*

_____
Name: Marissa Smith
Title:

Date: 03/10/2020

**TENANT(S):**

_____
Shatoya Hayes:
Date: 03/10/2020

_____
Marie Lofton:

Date: 03/10/2020

_____
:

Date:

_____
:

Date:

_____
:

Date:

_____
:

Date:

**GUARANTOR:**

_____
:

Date:

---

This document is digitally signed using RENTCafe eSignature services. Document ID: 10303005



## STATE-SPECIFIC DISCLOSURES

### (GEORGIA)

The following Georgia-specific terms and conditions are incorporated and made part of the Lease:

I.    The following definition shall be added to the end of paragraph 5 of Landlord's Rules and Regulations: "Abandonment" will be deemed to have occurred when all of the following occur: (a) all occupants have vacated the Property, in Landlord's reasonable judgment, (b) Tenant is in breach of this Lease by not timely paying Rent and (c) Landlord has delivered written notice to Tenant (by affixing it to the inside of the main entry door or, if Landlord is prevented from entering the Property, by affixing it to the outside of the main entry door) that states that Landlord considers the Property abandoned, and Tenant fails to respond to the affixed notice by the time required in the notice, which will not be less than five (5) days from the date the notice is so affixed.

II.    Notwithstanding paragraph 7 of Landlord's Rules and Regulations, Landlord will give Tenant at least two (2) days' prior notice of Landlord's intent to enter upon the Property, except as provided under paragraph 7(b) of Landlord's Rules and Regulations.

This document is digitally signed using RENTCafe eSignature services. Document ID: 10303005



**SECURITY DEPOSIT ADDENDUM**

**(GEORGIA)**

The following terms and conditions are incorporated and made a part of the Lease:

1.      **Security Deposit**. On or before the execution of the Lease, Tenant must pay the Security Deposit to Landlord, in the amount noted on page 1 of the Lease which will not to exceed one and one- half month's Rent, by (*please check all that apply*):

             (X) cashier's check             AND/OR              (X) money order.

2.      No Interest to Tenant. No interest or income will be paid to Tenant on the Security Deposit. Landlord may, in its sole discretion, place the Security Deposit in an interest-bearing or income- producing account; however, any interest or income earned thereon will be paid to Landlord or Landlord's agent.

3.      **Refund: Tenant shall give Landlord at least 30 days written notice of surrender of the Property. If there is more than one Tenant named on the Lease, any refund of the Security Deposit will be made payable to all named Tenants.**

             a.   Notwithstanding the foregoing, Tenant acknowledges and agrees that Georgia law does not obligate Landlord to return or account for the Security Deposit until Tenant surrenders the Property and gives Landlord written notice of Tenant's forwarding address, after which Landlord has 30 days in which to return or account for the Security Deposit. If no forwarding address is so provided, Landlord will deliver to Tenant the Security Deposit (or portion thereof) and a written accounting listing the specific reasons for retaining any portion of the Security Deposit, which will be sent via first class mail to Tenant's last known address.

             b.   "Surrender" occurs when all of the following occur: (a) on the date Tenant specifies as the Move-Out date in its written notice to Landlord, (b) when all occupants have vacated the Property and removed their personal furnishings and belongings, in Landlord's reasonable judgment, and (c) Tenant has returned their keys, garage door remotes, mailbox keys and other access devices to Landlord.

---

**9**   Lease - <u>4711 Plantation Mill Trail Buford, GA 30519</u>                    American Homes 4 Rent®



4.        **Deductions**.  Landlord may deduct the following reasonable fees and charges from the Security Deposit (collectively, the "Deductions"), and if the Deductions exceed the Security Deposit,

Tenant shall pay Landlord any excess amounts within 10 days after Landlord makes written demand therefor:

a. damage to  the Property, excluding  normal wear and  tear, and  all  reasonable costs associated with repairing such damage to the Property;

b. costs for which Tenant is responsible to clean, deodorize, exterminate, and maintain the Property;

c. unpaid or accelerated Rent;

d. unpaid Late Fee or charges;

e. unpaid Pet Fees or charges;

f. unpaid utilities, utility expenses or administrative costs incurred by Landlord in connection with utilities to the Property;

g. cost of replacing unreturned keys, garage doors openers, security devices, pool keys or other components relating to the Property or any amenities to the Property;

h. cost of removing unauthorized locks or fixtures installed by Tenant;

i. cost incurred by Landlord to access the Property if made inaccessible by Tenant;

j. cost of replacing missing or burned-out light bulbs and fluorescent tubes (at same location and of the same type and quality in the Property on the Commencement Date);

k. cost of packing, removing, and storing any abandoned personal property;

l. cost of removing abandoned or illegally parked vehicles;

m. costs of reletting, if Tenant is in default under Section 16 of the Lease;

n. attorney's fees, costs of court, costs of service, and other reasonable legal or administrative costs incurred in connection with any legal proceeding against Tenant;

o. mailing costs and other administrative costs associated with sending notices to Tenant in connection with enforcement efforts;

p. any other unpaid charges or fees or other amounts for which Tenant is responsible under the Lease;

q. cost of restoring walls, flooring, landscaping or any alteration made to the Property which were not pre-approved by Landlord in writing; and

r. damage to the Property caused by smoking, including, but not limited to, stains, burns, odors, and removal of debris.

This document is digitally signed using RENTCafe eSignature services. Document ID: 10303005



## PRIVACY POLICY

**Our Commitment to Privacy**

We respect the privacy of your information. We provide this explanation about our general and online information practices as a show of our commitment to protect your privacy.

We do not sell, rent, or share personally-identifiable information collected during your use of our Website, except as described herein in this Privacy Policy.

**The Information We Collect**

The customer information we collect is categorized as follows in accordance with the California Online Privacy Act:

Application Information - information that you provide to us through our Website and through other means. Examples include your name, age, physical address, zip code, phone numbers, email address, social security number, driver's license number, government ID, etc.

Transaction and Experience Information - information about your transactions with us, as well as information about our communications with you. Examples include your account history, geolocation data, your requests for information and our responses.

Information from Outside Sources - information from outside sources regarding your credit, background and other relationships. Examples include your employment history, and public record information.

We need this information to provide the goods and services that you request and to let you know of additional goods and services about which you might be interested. We also use this information to customize your experience using our Website.

We may also share the information we collect about you with third parties from one or more of the following categories:

- Retailers
- Vendors contracted by us to service your account
- Credit Card Companies
- Credit Reporting Companies
- Rental Databases
- Banks
- Homeowners Associations
- Government Agencies

---

**11** | Lease - <u>4711 Plantation Mill Trail Buford, GA 30519</u>        American Homes 4 Rent®



We may ask you for personally-identifiable information at other times, such as if you enter into a promotion, make a payment, post a classified ad, communicate with us, apply for or enter into a lease with us, or complete a survey. If you opt-in to receive information regarding a promotion, you give us your permission to share your name and e-mail address with the third party offering the promotion.

In addition, we automatically gather general statistical information about our Website and visitors, such as IP addresses, browsers, pages viewed, number of visitors, goods and services purchased, geolocation data, etc., but in doing so we do not reference you by individual name, e-mail address, home address, or telephone number. We use this data in the aggregate to determine how much our customers use parts of our site so we can improve our site. We may provide this statistical information to third parties, but when we do so we do not provide personally-identifiable information without your permission.

As part of our service, we use cookies to store and sometimes track information about you. Some features of our site may be available only through the use of a cookie. A cookie is a small amount of data that is sent to your browser from a web server and stored on your computer's hard drive. Generally, we use cookies to remind us who you are and enable us to access your account information so you do not have to re-enter it; gather statistical information about usage by registered or unregistered users, research visiting patterns, and help target advertisements based on user interests; assist our retail partners track visits and process orders; and track progress and participation in promotions. In some instances, our retail partners and advertisers appearing at our site may use their own cookies. Preference and options configurations in your browser determine if and how a cookie will be accepted. You can change those configurations on your computer if you desire. By changing your preferences, you can accept all cookies, you can be notified when a cookie is set, or you can reject all cookies. If you do so and cookies are disabled, you may be required to re-enter your information more often and certain features of our site may be unavailable.

**The Way We Use Information**

We use your personally-identifiable information to improve our marketing and promotional efforts, to statistically analyze site usage, to improve our content and product offerings and to customize our site's content, layout, and services. We may use your personally-identifiable information to obtain further information about you, for example in performing background and credit checks, etc., should you ask to be qualified for house rental transactions.

We may use your information to deliver information to you that, in some cases, is targeted to your interests, such as targeted banners, new services and promotions. You can opt-out of receiving this information by unchecking the box in your registration/preference file. We may ask you to provide us voluntarily with additional information regarding your personal or business interests, experience or requests, which we may use to customize our service for you.

We use your e-mail address, your mailing address, and phone number to contact you regarding administrative notices, new product offerings and communications relevant to your use of the site. We will not send you promotions or announcements unless you give us permission to do so. You can opt out of receiving such contact by contacting American Homes 4 Rent via email or regular mail.

If you place a request for products or services, we use information to ship your order; if the products or services are from a retail partner, we may provide your relevant information to that retailer for purposes of the transaction. If you establish a credit account with us or our providers, we collect

This document is digitally signed using RENTCafe eSignature services. Document ID: 10303005



additional information, including billing information, credit card number and expiration date, and tracking information from checks or money orders.

We may also use or disclose information to resolve disputes, investigate problems, or enforce our Terms of Service. At times, we may review status or activity of multiple users to do so. We may disclose or access information whenever we believe in good faith that the law or regulation or a homeowner's association so requires or if we otherwise consider it necessary to do so to maintain service and improve our products and services.

We use your IP address to help diagnose problems with our server, to manage our Website and to enhance our site based on the usage pattern data we receive.

**Do Not Track Signals**

Our website does not currently act on DNT (Do Not Track) signals received, and does not respond to such signals.

**Third Party Access to Data**

In general, other parties (e.g., advertisers) are not allowed by our website to collect personally-identifiable information about a consumer's online activities when that consumer visits our website or online service. However, this policy does not apply to certain services on our website that are actually provided by third parties, generally identified on our website as **"Powered by [name of Third Party]"** or similar language; in those situations the relevant third party will have access to data collected as part of the services rendered, and you are asked to review the terms and conditions of use and the privacy policy of the relevant third party before using the services. It is expected that such third party service providers may share the information they collected with us, including personally-identifiable information.

**Security**

We employ commercially reasonable and current security methods to prevent unauthorized access, maintain data accuracy, and ensure correct use of information.

Your account information and profile are password-protected. We recommend that you do not divulge your password to anyone. Our personnel will never ask you for your password in an unsolicited phone call or in an unsolicited e-mail. Remember to sign out of your account and close your browser window when you have finished your session. This is to help ensure that others cannot access your personal information and correspondence if you share a computer with someone else or are using a computer in a public place where others may have access to it. Whenever you voluntarily disclose personal information online--for example on message boards, through e-mail or in chat areas--that information can be collected and used by others. No data transmission over the Internet or any wireless network can be guaranteed to be perfectly secure. As a result, while we try to protect your personal information, we cannot ensure or guarantee the security of any information you transmit to us, and you do so at your own risk. How You Can Update, Correct or Delete Your Information

You can access the information that we collect online and maintain through normal updating methods. To update, correct or delete this information, you can contact us at: info@ah4r.com. Your account can be deleted or deactivated, but doing so will result in your not being able to access member service. During the normal course of doing business, we will continue to share your

---

**13**    Lease - <u>4711 Plantation Mill Trail Buford, GA 30519</u>    American Homes 4 Rent®



information among our business units, our affiliates and unaffiliated third parties as necessary in order to service your accounts and fill any orders you place with us.

**Children Under 13**

This site is intended to be used by users that can form enforceable contracts with us, generally at least 18 years of age. We do not knowingly collect personally-identifiable information on children under the age of 13. We do not accept registration by minors under the age of 13, and we will terminate the accounts of underage users. However, we have no way of distinguishing the age of individuals who access our Website, and we will honor the requests by any minor under the age of 13 to remove the information he or she posted as a registered user, unless the information is posted anonymously or by third parties or otherwise exempted by law. The parent or guardian of any registered user under the age of 13 may also contact us in writing and provide a contact email or phone number to remove the personally-identifiable information of the user and opt out of promotional opportunities.

**Third Party Practices**

The Privacy Policy of an advertiser or promotional service appearing at our site may differ from ours. We encourage you to read that policy before responding to any offer.

**Changes to Our Policy**

This Privacy Policy amends the Privacy Policy of January 1, 2014, and will become effective on July 20, 2015. Any changes to our Privacy Policy will be communicated through our Website at least five (5) business days in advance of its effective date. Information collected before changes are made will be secured according to the previous Privacy Policy. **Your Consent**

By using our Website, you consent to the collection and use of this information in the manner we describe.

This document is digitally signed using RENTCafe eSignature services. Document ID: 10303005



## BED BUGS NOTICE

This Bed Bugs Notice, which is required by law, is incorporated and made a part of the Lease.

i.   *Acknowledgement*. Tenant hereby acknowledges and agrees that Landlord has informed Tenant that the Property has **NO BED BUG INFESTATIONS** prior to the execution of the Lease and that Tenant has (or has had an opportunity to) inspect the Property to confirm that no bed bug infestation exists. To the extent that there have been any reported instances of bed bug infestations in the Property, Landlord has had the Property treated by a licensed pest control company, at the conclusion of which the Property was found to be free of bed bugs.

ii.   *Prior Residence*. Tenant hereby warrants and certifies to Landlord that: (A) Tenant is not moving from, and has not lived in, a property, residence, house and/or apartment that has experienced or been subject to a bed bug infestation within the eighteen-month-period immediately preceding the beginning of the Term; (B) Tenant has inspected Tenant's personal belongings, furniture, mattress, clothing and possessions and found them to be free of bed bugs; and (C) Tenant has not been subjected to conditions in which there was a bed bug infestation prior to taking possession of the Property.

iii.   *Responsibilities and Delivery of Possession*. Tenant agrees that any infestation of bed bugs in the Property will constitute damage to and defacement of the Property. In consideration of the disclosures provided herein, if the Property becomes, or is discovered to be, infested with bed bugs at any time during the Term, any renewal term hereof, or between Tenant's Move-out and Landlord's possession of the Property, such infestation will be conclusively presumed to be caused by Tenant, and in such an event, Tenant agrees that Tenant will be responsible for any costs and/or damages incurred by Landlord as a result of such bed bug infestation, including, but not limited to, the cost of treatment for the Property as recommended by a qualified and licensed pest control company engaged by Landlord in its sole discretion. Furthermore, Landlord may declare Tenant in default of the Lease and pursue any and all remedies available to Landlord for default at law or under the Lease.

iv.   *Indemnification*. Under no circumstances will Landlord and  or  agents of Landlord  be held responsible for any of Tenant's losses, damages or expenses, including, but not limited to, special, consequential or punitive damages arising out of a bed bug infestation, inspection or treatment. Additionally, Tenant agrees to  indemnify and hold harmless the Landlord, its  affiliates, agents and employees from any actions, claims, losses damages and/or expenses (including, but not limited to, attorney's fees) that Landlord may incur as a result of a bed bug infestation, inspection or treatment. This indemnification will not apply if such damages, costs, losses, or expenses are directly caused by the negligence of the Landlord.

---

**15** | Lease - <u>4711 Plantation Mill Trail Buford, GA 30519</u>          American Homes 4 Rent®



**OFAC COMPLIANCE ADDENDUM**

The following terms and conditions are incorporated and made a part of the Lease:

1. Tenant represents and warrants that (i) Tenant is not: (1) currently identified on the Specially Designated Nationals and Blocked Persons List maintained by the Office of Foreign Assets Control, Department of the Treasury ("**OFAC**") and/or any other similar list maintained by OFAC pursuant to any authorizing statute, executive order or regulation (collectively, the "**List**"), or (2) a person or entity with whom a citizen of the United States is prohibited to engage in transactions by any trade embargo, economic sanction, or other prohibition of United States law, regulation, or Executive Order of the President of the United States; (ii) none of the funds or other assets of Tenant constitute property of, or are beneficially owned, directly or indirectly, by any Embargoed Person (as hereinafter defined), (iii) no Embargoed Person has any interest of any nature whatsoever in Tenant (whether directly or indirectly), (iv) none of the funds of Tenant have been derived from any unlawful activity with the result that the investment in Tenant is prohibited by law or that the Lease is in violation of law, and (v) Tenant has implemented procedures, and will consistently apply those procedures, to ensure the foregoing representations and warranties remain true and correct at all times. The term "Embargoed Person" means any person, entity or government subject to trade restrictions under U.S. law, including but not limited to, the International Emergency Economic Powers Act, 50 U.S.C. §1701 et seq., The Trading with the Enemy Act, 50 U.S.C. App. 1 et seq., and any Executive Orders or regulations promulgated thereunder with the result that the investment in Tenant is prohibited by law or Tenant is in violation of law.

2. Tenant agrees (i) to comply with all requirements of law relating to money laundering, anti-terrorism, trade embargos and economic sanctions, now or hereafter in effect, (ii) to immediately notify Landlord in writing if any of the representations, warranties or covenants set forth in this paragraph or the preceding paragraph are no longer true or have been breached or if Tenant has a reasonable basis to believe that they may no longer be true or have been breached, (iii) not to use funds from any "Prohibited Person" (as such term is defined in the September 24, 2001 Executive Order Blocking Property and Prohibiting Transactions With Persons Who Commit, Threaten to Commit, or Support Terrorism) to make any payment due to Landlord under the Lease and (iv) at the request of Landlord, to provide such information as may be requested by Landlord to determine Tenant's compliance with the terms hereof.

3. Tenant agrees that Tenant's inclusion on the List at any time during the Term will be a material default of the Lease. Notwithstanding anything herein to the contrary, Tenant will not permit the Property or any portion thereof to be used or occupied by any person or entity on the

This document is digitally signed using RENTCafe eSignature services. Document ID: 10303005



List or by any Embargoed Person (on a permanent, temporary or transient basis), and any such use or occupancy of the Property by any such person or entity will be a material default of the Lease.

**NSF FEE SCHEDULE**

| STATE | NSF CHARGE |
|---|---|
|  |  |
| Arizona | $25 |
| California | $25 initial; $35 each subsequent |
| Colorado | $20 |
| Florida | $40 |
| Georgia | $30 |
| Idaho | $20 |
| Illinois | $25 |
| Indiana | $20 |
| Kentucky | $50 |
| Mississippi | $40 |
| Nevada | $25 |
| New Mexico | $30 |
| North Carolina | $25 |
| Ohio | $30 |
| Oklahoma | $30 |
| Oregon | $35 |
| South Carolina | $30 |
| Tennessee | $30 |
| Texas | $30 |
| Utah | $20 |
| Virginia | $50 |
| Washington | $40 |
| Wisconsin | $30 |

This document is digitally signed using RENTCafe eSignature services. Document ID: 10303005



## KEY ADDENDUM

The following terms and conditions are incorporated and made a part of the Lease:

1. Tenant may be provided with house keys, mailbox keys, pool access keys, and garage door remotes (collectively the "Keys"), as applicable, which can be obtained from Landlord's local Property Management office.

2. Tenant will remit a Key Deposit to the Property Management office before obtaining the Keys, and the amount of such Key Deposit will be the same as the replacement cost for new Keys.

3. The Keys will be returned to the local Property Management office on or before the end of the Term (or any earlier conclusion of Tenant's tenancy at the Property). Upon return of the Keys, Tenant will receive a refund of the Key Deposit, which will be returned with Tenant's Security Deposit (if applicable) in accordance with Section 4 of the Lease.  The Key Deposit can and may be used by Landlord to offset any damages caused by Tenant in accordance with Section 4 of the Lease.  If the Keys are not returned to the Property Management office on or before the end of the Term or any conclusion of Tenant's tenancy of the Property, then the replacement cost for new Keys can and may be deducted from Tenant's Key Deposit and/or Security Deposit.

4. If any Key is lost or misplaced during Tenant's tenancy, Tenant can pay the Property Management office for its replacement.  Tenant may not use the Key Deposit to replace any lost or missing Key(s) during Tenant's tenancy.

5. Upon any breach or default by Tenant under the Lease which remains uncured after the lapsing of any applicable cure period, Tenant's rights under this Key Addendum will automatically be deemed null and void and of no further force or effect, notwithstanding the subsequent cure of such breach or default by Tenant. Moreover, Tenant will immediately return the Keys to the Property Management office, and if the Keys are not so returned to the Property Management office within 10 days of Tenant's breach or default, then Tenant forfeits the right to receive any refund for the Key Deposit.

6. The acceptance by Landlord of Rent or the cure of a breach or default by Tenant will not be deemed a waiver by Landlord of any rights hereunder, unless specifically so stated in writing by Landlord at the time of such acceptance by Landlord of Rent.

This document is digitally signed using RENTCafe eSignature services. Document ID: 10303005



**UTILITIES PROVIDER ADDENDUM**

If the Landlord elects to maintain utilities in Landlord's name, the following terms and conditions relating to water, sewer, trash, gas and electricity service to the  Property (collectively the "Utility(ies)") are incorporated and made a part of the Lease:

1.      Landlord will maintain the Utility accounts in Landlord's name. Should Tenant cause Landlord's name to be removed from the Utility accounts, then Tenant will be in violation of the Lease and a penalty (which is subject to change from time to time by Landlord, in its sole discretion, upon reasonable notice to Tenant) will be assessed against Tenant to reimburse Landlord for the administrative costs of reverting the Utility accounts to Landlord's name.

2.      Although the Utility accounts will be maintained in Landlord's name, Tenant remains solely responsible for all costs of Utility services for the Property. Tenant's failure to pay any Utility costs, in accordance with the Lease, will be a Default under the Lease and may trigger penalties, fees and/or eviction proceedings as more particularly set forth in Section 16 of the Lease.

3.      Landlord will bill Tenant each month for the costs of Utility services for the Property based on the bills of the applicable Utility providers (the "Utility Charge").

4.      In addition to the Utility Charge, Tenant will also be billed a monthly service fee (the "Utility Fee") in accordance with the Fee Schedule set forth below (which is subject to change from time to time by Landlord, in its sole discretion, upon reasonable notice to Tenant). The Utility Fee reflects Landlord's administrative costs associated with billing, overhead and other similar expenses and costs.

5.      Tenant will also pay a one-time account set-up fee (the "Set-Up Fee") of $30.00 (which is subject to change from time to time by Landlord, in its sole discretion, upon reasonable notice to Tenant). The Set-Up Fee reflects Landlord's administrative costs associated with billing, overhead and other similar expenses and costs in connection with establishing the new Utility accounts and will not be charged on any renewal lease terms.

6.      Any Utility Charges due after Tenant's surrender of the Property and/or past due Utility Charges will be deducted from Tenant's Security Deposit in accordance with Section 4 of the Lease and the Security Deposit Addendum. The Utility Charges will be added to Tenant's final ledger statement and a copy of the Utility bill will be sent to Tenant. Tenant acknowledges that the 3rd party utilities provider that is currently engaged by Landlord to service the Property (Conservice) is not a public utility company and that said 3rd party utilities provider may estimate the Utility Charges due based on prior bill amounts and/or prior usage at the Property.

This document is digitally signed using RENTCafe eSignature services. Document ID: 10303005



7.    If the Property is located in a deregulated area for gas and/or electricity, Landlord will select the deregulated provider(s) (the "Preferred Provider") and such deregulated utility service account will remain in Landlord's name. In the event that Tenant desires to select an alternative provider in lieu of the Preferred Provider, Tenant must establish such alternative service and notify Landlord and Landlord's 3rd party utilities provider of such election to use an alternative service, and such notice will be delivered to Landlord within **eight (8) calendar days** after the Commencement Date (the "Opt-Out Date"). If Tenant fails to timely deliver such notice, Tenant will be deemed to have agreed to utilize the

Preferred Provider for the duration of the Term.  If Tenant switches from the Preferred Provider to an alternative provider after the Opt-Out Period, Tenant will pay an early utility termination fee of $100.00 (or the maximum amount allowed by law).

8.    If either Tenant elects to use an alternative provider under paragraph 7 above or Landlord and Tenant agree that Tenant will be directly responsible for obtaining and maintaining the Utility accounts in Tenant's name, and Tenant subsequently fails to so obtain and/or maintain Utility service such that Landlord (or Landlord's 3rd party utilities provider) is subsequently billed for Utility Charges attributable to Tenant's occupancy/tenancy, then Tenant will pay said Utility Charges billed to Landlord or its 3rd party utilities provider such services by Landlord (or Landlord's 3rd party utilities provider) and Tenant will pay Landlord a service charge of $60.00 for each such occurrence (which is subject to change from time to time by Landlord, in its sole discretion, upon reasonable notice to Tenant). Tenant and Landlord agree that said service charge is a reasonable estimate of damages incurred by Landlord as a result of Tenant's actions.

9.    All Utility Charges assessed to  the Property  will be charged to Tenant, including, but not limited to, stormwater charges, Utility-related charges appearing on tax bills (i.e., for stormwater, flood control, water quality, standby charges, etc.) and all miscellaneous charges appearing on the Utility bills received from the local Utility providers and charged to Landlord or Landlord's 3rd party utilities provider in connection with the Property.

This document is digitally signed using RENTCafe eSignature services. Document ID: 10303005



## UTILITY PROVIDER FEE SCHEDULE*

**TX, OH, IN, KY**

|  | Prior Conservice Lease | New Conservice Lease | Non-Conservice Lease |
|---|---|---|---|
| **New Move-In** | N/A | 9.99/month | N/A |
| **Existing Tenancy** | 6.50/month | 9.99/month | 4.99/month |
| **Conversion Tenancy** | N/A | 9.99/month | N/A |
| **Renewal Tenancy** | 2.99/month | 9.99/month | 2.99/month |

**All Other States**

|  | Prior Conservice Lease | New Conservice Lease | Non-Conservice Lease |
|---|---|---|---|
| **New Move-In** | N/A | 9.99/month | N/A |
| **Existing Tenancy** | N/A | 9.99/month | 4.99/month |
| **Conversion Tenancy** | N/A | 9.99/month | N/A |
| **Renewal Tenancy** | N/A | 9.99/month | 2.99/month |

*The Fee Schedule, which is current as of March 2015, is subject to change at Landlord's sole discretion.*

This document is digitally signed using RENTCafe eSignature services. Document ID: 10303005



**American Homes 4 Rent ("AH4R") Online Payment Policy**

1. Online payments are a convenience to our tenants but the ability to pay online is not guaranteed.  Some personal computers have settings that are incompatible with our system and AH4R reserves the right to remove access to on-line payments at its sole and absolute discretion.

2. If you are not able to complete a payment online for any reason, you are still responsible for getting that payment to us by the due date. Late fees will **NOT** be waived due to difficulties with the online system or your removal from on-line payment access for any reason.

3. Online payments post to your AH4R account that same day or the following business day.  Please be mindful of when you make payments.  AH4R does not control when payments are applied.

4. Funds **MUST** be available at the time AH4R's request is made to your bank or financial institution for payment.  It can take one (1) to seven (7) days for the money to come out of your account. Please make sure sufficient funds remain in your bank account until the payment clears. If there are not sufficient funds, the bank will return the payment to us as NSF ("insufficient funds"). An NSF fee will be assessed to your account for any returned payment. See NSF fee for your state, Exhibit A.

5. When setting up a payment on the portal, please make sure you enter correct information, especially the bank account and routing numbers.  If the numbers are entered incorrectly, NSF fees will apply.

6. If you overpay or pay multiple times resulting in an overage charge by your bank or financial institution, AH4R cannot reverse any payment(s). Your **only** recourse will be to have a credit applied to your account for the following month.

7. AH4R reserves the right to deny access to the on-line payment portal for any NSF payments.  Subsequent access to the on-line payment portal will be reviewed by AH4R and its decision to allow access after any NSF payments is at AH4R's sole and absolute discretion.

8. Future payments after an NSF **MUST** be in certified funds. No personal checks or online payments will be accepted in lieu of an NSF payment.

9. If a tenant has two or more NSFs in a year, tenant's use of the online payment portal will be permanently disabled, and all future payments will be in certified funds.

This document is digitally signed using RENTCafe eSignature services. Document ID: 10303005



Effective Date:  February 10, 2017

**LANDLORD'S RULES AND REGULATIONS**

The following are Landlord's Rules and Regulations, which are incorporated and made a part of the Lease and all Tenants, Occupants, Guests and/or Invitees of the Property are subject to and will strictly comply with these Rules and Regulations. These Rules and Regulations are subject to change from time to time, at Landlord's sole discretion, and any such changes will be posted to AH4R's website at www.americanhomes4rent.com/rulesandregulations. **IT IS TENANT'S RESPONSIBILITY TO KEEP UP TO DATE ON ANY CHANGES TO LANDLORD'S RULES AND REGULATIONS, AND LANDLORD WILL HAVE NO OBLIGATION TO NOTIFY TENANT WHEN/IF CHANGES ARE MADE.** Please consult the local Property Management Office with any questions regarding any of these Rules and Regulations.

1.  **Delay of Occupancy**. Tenant must occupy the Property within 5 days of the Commencement Date. If Tenant is unable to occupy the Property on or before the 5th day following the Commencement Date because of Landlord's construction work upon the Property or a prior occupant's hold over tenancy, such delay shall be governed by the terms set forth in Section 2(b) of the Lease.

2.  **Time is of the Essence**. Time is of the essence for the payment of Rent, Additional Rent and any other fees or charges due under the Lease, and strict compliance with rental due dates is required.

3.  **Pet Policy.** *Only those pets listed on page 2 of the Lease are approved by Landlord and (as such) to be permitted to be kept at the Property*. The following applies to Tenants who have such Landlord approved pets at the Property:

    a.  Tenant certifies to Landlord that Tenants' pet(s) is/are in good health.
    b.  Tenant will keep pets on a leash when not in the house or in a fenced backyard and will clean up all pet waste on the Property and any common areas.
    c.  If the Property is subject to a Homeowners' Association ("HOA"), Tenant will abide by all HOA rules and regulations and Covenants, Conditions and Restrictions ("CC&R's") with respect to pet ownership. Moreover, Tenant will abide by all city and local ordinances regarding pet ownership (e.g., leashing, curbing, registration, licensing, vaccinations, etc.).
    d.  If applicable, Tenant will pay monthly Pet Rent, in the amount set forth on page 1 of the Lease, for so long as the pet(s) remain(s) or stay(s) at the Property.  The Pet Rent is subject to change from time to time at Landlord's sole discretion, upon reasonable notice to Tenant.
    e.  Tenant may not permit any animal to come onto or into the Property (including, but not limited to, any dog, cat or other mammal, any reptile, bird, fish, rodent, or insect), even if only temporarily without Landlord's prior written consent. If Tenant violates this prohibition of animals on or in the Property, Landlord may take all or any of the following actions:
        i.  Declare Tenant in Default and exercise Landlord's remedies under Section 16 of the Lease;

---

1    American Homes 4 Rent®



Effective Date: <u>February 10, 2017</u>

     ii.  Charge Tenant, as Additional Rent, a <u>$500.00</u> Pet Rent charge and <u>$20.00</u> per day per animal thereafter for each day Tenant is in violation of this rule 2(e); and

    iii.  Charge Tenant for any costs incurred by Landlord in connection with:

        A.  exterminator services for the Property for fleas and other pests;

        B.  cleaning and deodorizing the Property's carpets and drapes; and

        C.  repairing any damage to the Property caused by the unauthorized animal.

4. **Contact Information.** Tenant must promptly notify Landlord of any changes in Tenant's phone number(s) (i.e., home, work and mobile numbers) and email address(es) from those provided in the Lease and such notice will be delivered to Landlord no later than 5 days after any such change.

5. **Abandonment.** Tenant may not abandon the Property. If Tenant abandons the Property, Tenant will remain liable for all Rent, Additional Rent, fees and costs for the full Term of the Lease.

6. **Abandoned Personal Property.** If Tenant leaves any furnishings, personal belongings or personal property (collectively the "Personal Property") in the Property after surrendering or abandoning the Property, Landlord may, in its sole discretion:

    a.  Dispose of such Personal Property in the trash or waste facility;

    b.  Donate such Personal Property to a charitable organization; or

    c.  store and sell such Personal Property.

Tenant will reimburse Landlord for all reasonable costs incurred in connection with packing, removing, transporting, storing, disposing and/or selling the Personal Property after abandonment by Tenant.

7. **Access by Landlord:**

    a.  **Signs and Advertising.** Landlord may prominently display a "For Sale", "For Lease", "For Rent" or similarly worded sign on the Property at any time during the Term or any renewal term. In addition, Landlord and/or Landlord's agents will have the right to take exterior photographs or images of the Property from time to time and at any time and use such photographs or images in advertisements or marketing materials for the Landlord or the Property.

    b.  **Access.** Before accessing the Property, Landlord and/or Landlord's agents will attempt to first contact Tenant to give advanced notice, but Landlord and/or Landlord's agents may enter the Property at reasonable times without advanced notice to make repairs or show the Property to prospective tenants or buyers, inspectors, fire marshals, lenders, appraisers, or insurance agents. Additionally, Landlord and/or Landlord's agents may peacefully enter the Property at reasonable times without first attempting to contact Tenant and without notice to:

        i.  survey the Property's condition and take photographs to document the condition of the Property for evictions, reported nuisances and/or disturbances at the Property;

        ii.  assess or make emergency repairs;

        iii.  exercise a contractual or statutory lien; or

        iv.  deliver written notices.

**2**   American Homes 4 Rent®



Effective Date:  February 10, 2017

c.   **Notice.**  Landlord may enter the Property upon advanced notice (in accordance with state law), for routine and ordinary inspections, repairs, maintenance and improvement work, subject to paragraphs 7(a) and (b) above.

d.   **Trip Fee.** If Landlord and/or Landlord's agents are denied access or are not able to access the Property after first attempting to contact Tenant, Landlord may charge Tenant a "trip fee" (in the amount set forth on page 1 of the Lease) , which is subject to change from time to time at Landlord's sole discretion.

8.   **HOA.** If the Property is subject to an HOA, Tenant acknowledges that Tenant has received a copy of, read, understood and agrees to abide by all HOA rules and regulations and/or CC&R's (collectively, the "HOA Rules"). Tenant will reimburse Landlord for any fines or other charges assessed against the Property or Landlord by the HOA for Tenant's failure to comply with the HOA Rules. Landlord may charge back onto Tenant's ledger any fines or other charges assessed against the Property  or Landlord by the HOA, as well as any administrative fees (which are subject to change from time to time at Landlord's sole discretion) incurred by Landlord in connection with Tenant's non-compliance with the HOA Rules.

9.   **Parking**. Tenant is permitted to park vehicles at the Property subject to the HOA Rules and state/local laws. Tenant may not park or permit any person to park any vehicles on the grass area (or any landscaped area) in the front or back yard. Vehicles are only permitted to be parked in driveways, garages, designated common parking areas, or in the street against the curb adjacent to the Property, subject to the HOA Rules and state/local laws. Tenant may not store or permit any person to store any vehicle on or adjacent to the Property or in the street against the curb adjacent to the Property. In accordance with applicable state/local laws, Landlord may tow, at Tenant's expense, and assess Tenant an administrative fee (which are subject to change from time to time at Landlord's sole discretion) for the following:

a.   any inoperative vehicle on or adjacent to the Property;

b.   any vehicle parked in violation of this paragraph 8; or

c.   any vehicle parked in violation of any HOA Rules or state/local laws.

10.   **Security Devices and Door Locks**. All requests by Tenant to rekey or change, install,  repair, or replace security devices and/or door  locks must be in writing. Installation of additional  security devices  or rekeying  or replacement of  security  devices and/or door locks  so requested by Tenant  will be  at Tenant's sole cost and expense and may be installed only by contractors engaged and authorized by Landlord.

11.   **Marijuana**. Tenants, Occupants, Guests and/or Invitees of the Property are not permitted to grow or cultivate any marijuana plants on the Property under any circumstances. Furthermore, Tenants, Occupants, Guests and/or Invitees of the Property are not allowed to use, possess, or distribute marijuana for medical or recreational use on the Property, per any applicable Federal Laws and/or the Controlled Substance Act. Landlord's Marijuana policy is governed by Federal Law exclusively and will supersede any provision in the Lease that states that the Lease is governed by controlling state law.

12.   **Pool/Spa/Hot Tub:**

a.   If applicable, Tenant will use the swimming pool, spa and/or hot tub at Tenant's own risk.

| 3 | American Homes 4 Rent® |
|---|---|



Effective Date: February 10, 2017

Landlord will not be responsible for any injuries sustained by Tenants, Occupants, Guests and/or Invitees of the Property in connection with the swimming pool, spa and/or hot tub.

b. Landlord is responsible for the general maintenance of the swimming pool, spa and /or hot tub. This includes, but is not limited to, keeping the swimming pool, spa and hot tub clean of debris and ensuring the proper levels of chemicals to maintain the quality of the pool, spa and/or hot tub water.

c. Tenant is responsible for keeping the pool/spa/hot tub areas clean, neat and organized.

d. Tenant must immediately notify Landlord of any repair that the pool, spa and/or hot tub may require. This includes immediate notification due to pool guards, gate latches or fence repairs, where applicable.

e. Tenant is responsible for the full cost of repair and/or replacement of the swimming pool, spa and/or hot tub if such repair and/or replacement is a result of negligence or misconduct by Tenants, Occupants, Guests and/or Invitees of the Property.

f. Tenant must always operate the swimming pool, spa and/or hot tub in accordance with the manufacturer's instructions.

g. Safety features have been installed at the Property to ensure the Property's compliance with state/city/local pool safety laws. Tenant is responsible for maintaining such safety features and must notify Landlord immediately if such safety features are faulty, broken or missing due to the negligence or misconduct of Tenants, Occupants, Guests and/or Invitees of the Property.

h. No pets of any kind are permitted in the swimming pool, spa and/or hot tub at any time.

i. Tenant understands that the swimming pool and/or hot tub are strictly an amenity, and that the use of this amenity is not guaranteed under the Lease. Any interruption or non-availability of the use of the swimming pool, spa and/or hot tub will not be deemed a violation by Landlord of any obligation under the Lease.

j. Tenant also acknowledges and agrees that Landlord does not guarantee that the swimming pool will be heated and/or heatable. A "heated and/or heatable" swimming pool is strictly an amenity, and that the use of this amenity is not guaranteed under the Lease. Any interruption or non-availability of the use of a "heated and/or heatable" swimming pool will not be deemed a violation by Landlord of any obligation or covenant under the Lease.

13. **Water Intrusion Events and Mold.** Both Landlord and Tenant have various duties and responsibilities when dealing with water intrusion events and/or mold at the Property. In all and any cases of water intrusion events and/or mold at the Property, Tenant must notify Landlord in writing immediately.

a. Mold is made up of naturally occurring microscopic organisms which reproduce spores. Mold breaks down and feeds on organic matter that naturally occurs in the environment. The mold spores scatter through the air and the combination moisture and organic matter allows for mold growth. Certain types of mold can lead to serious health risks and/or allergic reactions. Not all mold is easy to see, however when it is, it is often seen in the form of discoloration, that ranges from white to orange or from green to brown or black.

This document is digitally signed using RENTCafe eSignature services. Document ID: 10303005



Effective Date: February 10, 2017

There is also a musty odor present. Minimizing the amount of moisture along with proper housekeeping helps reduce the chance and amount of mold and mold growth. Appropriate precautions need to be taken to minimize the potential for mold growth by Tenant.

b.  If small areas of mold are already present or occur on non-porous surfaces, for example, ceramic tile, Formica, vinyl flooring, metal, wood or plastic. Tenant agrees to clean the surface with a soap and water mixture; letting  the surface area dry and  then, within twenty-four (24) hours apply a pre-mixed household spray such as Lysol Disinfectant or Pine-Sol Disinfectant. If the product contains bleach it can discolor or stain the surface.

c.  Do not apply household cleaners to visible mold on porous surfaces such as sheetrock walls or ceilings. Notify Landlord in writing and Landlord will take appropriate action.

d.  Tenant will report to Landlord in writing of any visible or suspected water intrusion event or mold, including, but not limited to:

    i.  visible or suspected mold,

    ii.  air conditioning problems or spillage,

    iii.  plant watering overflows,

    iv.  musty odors,

    v.  leaky faucets or plumbing issues,

    vi.  pet urine accidents, and

    vii.  discoloration of walls, baseboards, doors, window frames, or ceiling.

e.  If Tenant fails to strictly comply with this paragraph 12, Tenant may be held responsible for all damage to the Property and any health problems that may develop as a result thereof.

f.  Tenant hereby agrees that Landlord and/or Landlord's agents may conduct periodic inspections of the unit at any time with reasonable notice.

g.  Please refer to the United States Environmental Protection Agency's "A Basic Guide to Mold, Moisture and Your Home" which is available at www.epa.gov/mold/pdfs/moldguide.pdf.

14.  **LANDLORD'S MAINTENANCE OBLIGATIONS**: Landlord will maintain, replace or repair any items on the Property for which state law dictates Landlord is responsible.  In addition and subject to Section 9 of the Lease, Landlord will be responsible for the following: roofs, front and back doors, foundations, HVAC, electrical system, plumbing, hot water tank, structural components, exterior painting and siding, locks and keys, ceilings, pool, spa, and hot tubs.

a.  **Pest Control**: Landlord will provide pest control only in the following two (2) circumstances: (i) prior to Tenant's occupancy if Tenant so requests or (ii) to address infestations that compromise the structural integrity of the Property (*e.g.*, termites, carpenter ants, etc.).

b.  **Replacement of Fixtures**: Landlord reserves the right to replace the fixtures with similar items, in Landlord's sole and absolute discretion.  Landlord does not have to replace the fixtures with the exact brand, style, grade, color or accessories, so long as the replacement fixture is fit for its particular use.

c.  **Emergencies:** Emergencies must be reported immediately to Landlord and include the following:

    i.  Electrical: arcing, fire, smoke, no power, overheated fixtures.

This document is digitally signed using RENTCafe eSignature services. Document ID: 10303005



Effective Date:  February 10, 2017

ii. Fire: Tenant must first notify the fire department immediately, followed by an emergency call to the Landlord.
iii. Heat: ONLY if health risks exist as documented by a physician.
iv. Air Conditioning: ONLY if health risks exist as documented by a physician.
v. Heavy Structural Damage: roof, foundation and walls.
vi. Plumbing: Flooding or stoppage of all drains (Tenant is responsible for all plumbing stoppages except when caused by roots or breakdown of fixture not caused by Tenant).
vii. Theft: Tenant must first notify police immediately, followed by a report to Landlord no later than the following business day.

15.    **TENANT'S MAINTENANCE OBLIGATIONS:**

**General Responsibilities**:
a.  keep the Property clean and sanitary;
b.  promptly dispose of all garbage in appropriate receptacles;
c.  supply and change heating and air conditioning filters at least once every 3 months;
d.  supply and replace all light bulbs, fluorescent tubes, and batteries for smoke alarms, carbon monoxide detectors, garage-door openers, ceiling fan remotes, and other devices (of the same type and quality in the Property on the Commencement Date);
e.  maintain appropriate levels of necessary chemicals or matter in any water softener;
f.  take action to promptly eliminate any dangerous condition on the Property;
g.  maintain all storm door(s) and screen door(s);
h.  maintain all internal and external ice makers and water dispensers;
i.  maintain and repair washers and dryers;
j.  replace and/or repair window screens;
k.  replace and maintain all shower rod(s);
l.  repair all clogged drains and toilets, except when caused by roots or breakdown of fixture not caused by Tenant;
m.  repairs to the Property due to break-in or vandalism, or due to the fault of Tenant or Tenant's guests or invitees;
n.  winterize the Property – *e.g.*, maintain minimum levels of heat to prevent freezing of water pipes and outdoor spigots, wrapping of outside water main in winter, removal of snow accumulations, removal of ice from front of Property, etc.;
o.  repair or replace sprinkler heads and above ground irrigation;
p.  repair or replace mailboxes and pay for the community or group mailbox key(s);
q.  replace any lost or misplaced keys;
r.  pay any periodic, preventative, or additional extermination services desired by Tenant, including, but not limited to, bed bugs, fleas, ticks, etc.;
s.  remove any standing water;
t.  know the locations and operation of the main water cut-off valve and all electric breakers and how to switch the valve or breakers off at appropriate times to mitigate any potential damage; and
u.  in general, all nominal and/or incidental repairs to the Property – *i.e.*, repairs that cost $100 or less.

This document is digitally signed using RENTCafe eSignature services. Document ID: 10303005



Effective Date:  February 10, 2017

16. **PROHIBITIONS: Smoking is not allowed in the Property. Moreover, unless otherwise authorized under this Lease, Tenant may not install, or permit any of the following on the Property, even if only temporarily: spa, hot tub, above-ground pool, trampoline, or any item which may cause or causes a suspension or cancellation of property insurance coverage or increases property insurance premiums. In addition, Tenant may not permit any part of the Property to be used in connection with any activity that is a nuisance, offensive, noisy, or dangerous or involves:**
   a. Repairing any vehicle(s);
   b. Business or commercial activity of any type including, but not limited to, child care, subject to local law;
   c. Violates any zoning ordinance, homeowners' association rule or restrictive covenant;
   d. Illegal or unlawful activity; and/or
   e. Obstructs, interferes with, or infringes on the rights of other persons near the Property.

This document is digitally signed using RENTCafe eSignature services. Document ID: 10303005



---

**AMENITIES ADDENDUM**

The following terms and conditions are incorporated and made part of this Lease as if fully stated within. The Tenant acknowledges that in the community where the Property is located or at the Property itself:

1. Certain amenities or services maybe available including but not limited to: individual and/or communal lawn care or landscaping, swimming pools, fitness rooms, community centers, party rooms, parks, dog parks, and/or playgrounds (collectively "Amenities").

2. Regardless of whether these Amenities are being provided directly by the Landlord or by a Third-Party, such as a Homeowner's Association ("HOA") or Management Company (collectively "Third-Parties"), that Landlord has made no representation or guarantee of their ongoing availability or fitness for use.

3. Landlord has no obligation to the Tenant to provide, continue to provide, or allow accesses to the Amenities. The Landlord or Third-Parties at their sole discretion may deny Tenant access to the Amenities at any time for any reason not otherwise prohibited by law.

4. Any failure by the Landlord or Third-Party to provide an Amenity to the Tenant, whether temporary or permanent and whether global or specific to the Tenant, shall not serve as a basis for the Tenant to withhold rent or fail to meet any of their other obligations under the Lease. Additionally, any failure by the Landlord or Third-Party to provide an Amenity to the Tenant is not a basis to change or invalidate any terms of the Lease.

5. The Landlord shall not be responsible for any injury, loss, or damage of any kind relating to the Tenant's use or receipt of the Amenities, and the Tenant hereby assumes all risk and liability related to their use of the Amenities.

6. As a condition for access to, or receipt of, the Amenities, Tenant agrees to fully comply with all rules and regulations related to the Amenities imposed by the Landlord or Third-Party.

This document is digitally signed using RENTCafe eSignature services. Document ID: 10303005

## Document Information

Document Reference Number: 10303005

| Document Pages: 30 | Signatures: 3 | Status: Completed |
|---|---|---|
| | Initials: 0 | |

| Signature Summary | Signature | Initials | Timestamp | Signing Status |
|---|---|---|---|---|
| Shatoya Hayes | | | 03/10/2020 10:29:04 AM PST | Completed |
| Document Started:<br>Email Address: | 03/10/2020 10:28:11 AM PST | | | |
| Marie Lofton | | | 03/10/2020 01:59:17 PM PST | Completed |
| Document Started:<br>Email Address: | 03/10/2020 01:58:26 PM PST | | | |
| Marissa Smith | | | 03/10/2020 02:08:15 PM PST | Completed |
| Document Started:<br>Email Address: | 03/10/2020 02:06:58 PM PST | | | |

| Signature Details | Page | Signature/Initials | Signing Status | Tracking Details |
|---|---|---|---|---|
| Shatoya Hayes | 7 | | Completed | IP Address: 174.218.3.144<br>Timestamp: 03/10/2020 10:28:55 AM PST<br>User Agent: Safari on iPhone |
| Marie Lofton | 7 | | Completed | IP Address: 107.77.234.204<br>Timestamp: 03/10/2020 01:59:09 PM PST<br>User Agent: Chrome on Android |
| Marissa Smith | 7 | | Completed | IP Address: 12.233.188.90<br>Timestamp: 03/10/2020 02:07:48 PM PST<br>User Agent: Chrome on Windows |

# EXHIBIT B

# Resident Ledger

| | | |
|---|---|---|
| Date: | | 12/06/2022 |
| Resident Code: | | t0165898 |
| Property: | | ga16178 |
| Unit: | | GA16178 |
| Status: | | |
| Rent: | | $1,695.00 |
| Deposit: | | |
| Move In Date: | | 03/14/2020 |
| Move Out Date: | | 12/31/1999 |
| Due Day: | | 1 |
| Tel Num(Office): | | |
| Tel Num(Home): | | |

**Shatoya Hayes**
**4711 Plantation Mill Trail**
**Buford, GA 30519**

| Date | Description | Charges | Payments | Balance |
|---|---|---|---|---|
| | Balance forward | 0.00 | 0.00 | 0.00 |
| 02/29/20 | Chk# 59830063 - Credit Card On-Line Payment ; Web - Online Leasing | 0.00 | 100.00 | (100.00) |
| 02/29/20 | Application Fee (Shatoya Hayes) | 50.00 | 0.00 | (50.00) |
| 02/29/20 | Application Fee (Marie Lofton) | 50.00 | 0.00 | 0.00 |
| 03/04/20 | Security Deposit | 1,695.00 | 0.00 | 1,695.00 |
| 03/05/20 | :ACH-WEB - Online Payment - EFT Payment. Mobile Web - Resident Services | 0.00 | 1,695.00 | 0.00 |
| 03/09/20 | Chk# 60974796 - Credit Card On-Line Payment ; Mobile Web - Resident Services | 0.00 | 1,140.00 | (1,140.00) |
| 03/09/20 | Convenience Fee for Receipt Ctrl #7140145 | 40.00 | 0.00 | (1,100.00) |
| 03/14/20 | Admin Fee | 100.00 | 0.00 | (1,000.00) |
| 03/14/20 | Rent for 18 days | 984.19 | 0.00 | (15.81) |
| 04/01/20 | Chk# 62007021 - Credit Card On-Line Payment ; Mobile Web - Resident Services | 0.00 | 1,738.31 | (1,754.12) |
| 04/01/20 | City Utility Charges - Trash Service (04/2020) | 19.12 | 0.00 | (1,735.00) |
| 04/01/20 | Rent (04/2020) | 1,695.00 | 0.00 | (40.00) |
| 04/01/20 | Convenience Fee for Receipt Ctrl #7211389 | 40.00 | 0.00 | 0.00 |
| 05/01/20 | Electric - 03/14/20-04/12/20 | 75.01 | 0.00 | 75.01 |
| 05/01/20 | Fees - Utilities | 30.00 | 0.00 | 105.01 |
| 05/01/20 | Fees - Utilities | 9.99 | 0.00 | 115.00 |
| 05/01/20 | Sewer - 03/14/20-03/17/20 | 1.14 | 0.00 | 116.14 |
| 05/01/20 | Water - 03/14/20-03/17/20 | 1.31 | 0.00 | 117.45 |
| 05/01/20 | City Utility Charges - Trash Service (05/2020) | 19.12 | 0.00 | 136.57 |
| 05/01/20 | Rent (05/2020) | 1,695.00 | 0.00 | 1,831.57 |
| 05/05/20 | 2089 38278527 - :CHECKscan Payment | 0.00 | 1,000.00 | 831.57 |
| 05/05/20 | 2089 38278538 - :CHECKscan Payment | 0.00 | 600.00 | 231.57 |
| 06/01/20 | Electric - 04/12/20-05/11/20 | 82.65 | 0.00 | 314.22 |
| 06/01/20 | Fees - Utilities | 9.99 | 0.00 | 324.21 |
| 06/01/20 | Gas - 03/14/20-04/07/20 | 76.84 | 0.00 | 401.05 |
| 06/01/20 | Sewer - 03/18/20-04/15/20 | 33.49 | 0.00 | 434.54 |
| 06/01/20 | Water - 03/18/20-04/15/20 | 24.97 | 0.00 | 459.51 |
| 06/01/20 | City Utility Charges - Trash Service (06/2020) | 19.12 | 0.00 | 478.63 |
| 06/01/20 | Rent (06/2020) | 1,695.00 | 0.00 | 2,173.63 |
| 07/01/20 | Chk# 69444326 - Credit Card On-Line Payment ; Web - Resident Services | 0.00 | 1,840.00 | 333.63 |
| 07/01/20 | Electric - 05/11/20-06/10/20 | 103.31 | 0.00 | 436.94 |
| 07/01/20 | Fees - Utilities | 9.99 | 0.00 | 446.93 |
| 07/01/20 | Gas - 04/07/20-05/08/20 | 112.93 | 0.00 | 559.86 |
| 07/01/20 | Sewer - 04/16/20-05/15/20 | 29.42 | 0.00 | 589.28 |
| 07/01/20 | Water - 04/16/20-05/15/20 | 22.47 | 0.00 | 611.75 |
| 07/01/20 | City Utility Charges - Trash Service (07/2020) | 19.12 | 0.00 | 630.87 |
| 07/01/20 | Rent (07/2020) | 1,695.00 | 0.00 | 2,325.87 |
| 07/01/20 | Convenience Fee for Receipt Ctrl #7564114 | 40.00 | 0.00 | 2,365.87 |
| 07/22/20 | Chk# 71231888 - Credit Card On-Line Payment ; Mobile Web - Resident Services | 0.00 | 2,405.87 | (40.00) |

# Resident Ledger

|  |  |
|---|---|
| Date: | 12/06/2022 |
| Resident Code: | t0165898 |
| Property: | ga16178 |
| Unit: | GA16178 |
| Status: | |
| Rent: | $1,695.00 |
| Deposit: | |
| Move In Date: | 03/14/2020 |
| Move Out Date: | 12/31/1999 |
| Due Day: | 1 |
| Tel Num(Office): | |
| Tel Num(Home): | |

**Shatoya Hayes**
**4711 Plantation Mill Trail**
**Buford, GA 30519**

| Date | Description | Charges | Payments | Balance |
|---|---|---|---|---|
| 07/22/20 | Convenience Fee for Receipt Ctrl #7641427 | 40.00 | 0.00 | 0.00 |
| 08/01/20 | Fees - Utilities | 9.99 | 0.00 | 9.99 |
| 08/01/20 | Gas - 05/08/20-06/09/20 | 75.68 | 0.00 | 85.67 |
| 08/01/20 | Sewer - 05/16/20-06/15/20 | 28.61 | 0.00 | 114.28 |
| 08/01/20 | Water - 05/16/20-06/15/20 | 21.97 | 0.00 | 136.25 |
| 08/01/20 | City Utility Charges - Trash Service (08/2020) | 19.12 | 0.00 | 155.37 |
| 08/01/20 | Rent (08/2020) | 1,695.00 | 0.00 | 1,850.37 |
| 08/06/20 | Late Fee | 75.00 | 0.00 | 1,925.37 |
| 09/01/20 | Electric - 06/10/20-07/09/20 | 126.80 | 0.00 | 2,052.17 |
| 09/01/20 | Fees - Utilities | 9.99 | 0.00 | 2,062.16 |
| 09/01/20 | Gas - 06/09/20-07/10/20 | 37.74 | 0.00 | 2,099.90 |
| 09/01/20 | Sewer - 06/16/20-07/16/20 | 24.54 | 0.00 | 2,124.44 |
| 09/01/20 | Water - 06/16/20-07/16/20 | 19.48 | 0.00 | 2,143.92 |
| 09/01/20 | City Utility Charges - Trash Service (09/2020) | 19.12 | 0.00 | 2,163.04 |
| 09/01/20 | Rent (09/2020) | 1,695.00 | 0.00 | 3,858.04 |
| 09/06/20 | Late Fee | 75.00 | 0.00 | 3,933.04 |
| 10/01/20 | Electric - 07/09/20-08/11/20 | 174.14 | 0.00 | 4,107.18 |
| 10/01/20 | Fees - Utilities | 9.99 | 0.00 | 4,117.17 |
| 10/01/20 | Gas - 07/10/20-08/10/20 | 36.16 | 0.00 | 4,153.33 |
| 10/01/20 | Sewer - 07/17/20-08/18/20 | 31.05 | 0.00 | 4,184.38 |
| 10/01/20 | Water - 07/17/20-08/18/20 | 23.47 | 0.00 | 4,207.85 |
| 10/01/20 | City Utility Charges - Trash Service (10/2020) | 19.12 | 0.00 | 4,226.97 |
| 10/01/20 | Rent (10/2020) | 1,695.00 | 0.00 | 5,921.97 |
| 10/06/20 | Late Fee | 75.00 | 0.00 | 5,996.97 |
| 10/07/20 | 2089 38309680 - :CHECKscan Payment | 0.00 | 900.00 | 5,096.97 |
| 10/07/20 | 2089 38309690 - :CHECKscan Payment | 0.00 | 800.00 | 4,296.97 |
| 11/01/20 | Electric - 08/11/20-09/10/20 | 185.93 | 0.00 | 4,482.90 |
| 11/01/20 | Fees - Utilities | 9.99 | 0.00 | 4,492.89 |
| 11/01/20 | Gas - 08/10/20-09/10/20 | 41.86 | 0.00 | 4,534.75 |
| 11/01/20 | Sewer - 08/19/20-09/17/20 | 43.26 | 0.00 | 4,578.01 |
| 11/01/20 | Water - 08/19/20-09/17/20 | 30.95 | 0.00 | 4,608.96 |
| 11/01/20 | Rent (11/2020) | 1,695.00 | 0.00 | 6,303.96 |
| 11/01/20 | City Utility Charges - Trash Service (11/2020) | 19.12 | 0.00 | 6,323.08 |
| 11/06/20 | Late Fee | 75.00 | 0.00 | 6,398.08 |
| 12/01/20 | Electric - 09/10/20-10/09/20 | 96.46 | 0.00 | 6,494.54 |
| 12/01/20 | Fees - Utilities | 9.99 | 0.00 | 6,504.53 |
| 12/01/20 | Gas - 09/10/20-10/09/20 | 51.39 | 0.00 | 6,555.92 |
| 12/01/20 | Sewer - 09/18/20-10/16/20 | 33.49 | 0.00 | 6,589.41 |
| 12/01/20 | Water - 09/18/20-10/16/20 | 24.97 | 0.00 | 6,614.38 |
| 12/01/20 | Rent (12/2020) | 1,695.00 | 0.00 | 8,309.38 |
| 12/01/20 | City Utility Charges - Trash Service (12/2020) | 19.12 | 0.00 | 8,328.50 |
| 12/06/20 | Late Fee | 75.00 | 0.00 | 8,403.50 |
| 01/01/21 | Electric - 10/09/20-11/08/20 | 81.72 | 0.00 | 8,485.22 |
| 01/01/21 | Fees - Utilities | 9.99 | 0.00 | 8,495.21 |
| 01/01/21 | Gas - 10/09/20-11/09/20 | 88.88 | 0.00 | 8,584.09 |

# Resident Ledger

| | | |
|---|---|---|
| **Shatoya Hayes** | Date: | 12/06/2022 |
| **4711 Plantation Mill Trail** | Resident Code: | t0165898 |
| **Buford, GA 30519** | Property: | ga16178 |
| | Unit: | GA16178 |
| | Status: | |
| | Rent: | $1,695.00 |
| | Deposit: | |
| | Move In Date: | 03/14/2020 |
| | Move Out Date: | 12/31/1999 |
| | Due Day: | 1 |
| | Tel Num(Office): | |
| | Tel Num(Home): | |

| Date | Description | Charges | Payments | Balance |
|---|---|---|---|---|
| 01/01/21 | Sewer - 10/17/20-11/16/20 | 31.05 | 0.00 | 8,615.14 |
| 01/01/21 | Water - 10/17/20-11/16/20 | 23.47 | 0.00 | 8,638.61 |
| 01/01/21 | City Utility Charges - Trash Service (01/2021) | 19.12 | 0.00 | 8,657.73 |
| 01/01/21 | Rent (01/2021) | 1,695.00 | 0.00 | 10,352.73 |
| 01/06/21 | Late Fee | 75.00 | 0.00 | 10,427.73 |
| 02/01/21 | Electric - 11/08/20-12/09/20 | 95.78 | 0.00 | 10,523.51 |
| 02/01/21 | Fees - Utilities | 9.99 | 0.00 | 10,533.50 |
| 02/01/21 | Gas - 11/09/20-12/09/20 | 187.18 | 0.00 | 10,720.68 |
| 02/01/21 | Sewer - 11/17/20-12/18/20 | 32.68 | 0.00 | 10,753.36 |
| 02/01/21 | Water - 11/17/20-12/18/20 | 24.47 | 0.00 | 10,777.83 |
| 02/01/21 | City Utility Charges - Trash Service (02/2021) | 19.12 | 0.00 | 10,796.95 |
| 02/01/21 | Rent (02/2021) | 1,695.00 | 0.00 | 12,491.95 |
| 02/06/21 | Late Fee | 75.00 | 0.00 | 12,566.95 |
| 03/01/21 | City Utility Charges - Trash Service (03/2021) | 19.12 | 0.00 | 12,586.07 |
| 03/01/21 | Electric - 12/09/20-01/08/21 | 98.55 | 0.00 | 12,684.62 |
| 03/01/21 | Fees - Utilities | 9.99 | 0.00 | 12,694.61 |
| 03/01/21 | Gas - 12/09/20-01/11/21 | 231.32 | 0.00 | 12,925.93 |
| 03/01/21 | Sewer - 12/19/20-01/19/21 | 44.63 | 0.00 | 12,970.56 |
| 03/01/21 | Water - 12/19/20-01/19/21 | 31.79 | 0.00 | 13,002.35 |
| 03/01/21 | Rent (03/2021) | 1,695.00 | 0.00 | 14,697.35 |
| 03/06/21 | Late Fee | 75.00 | 0.00 | 14,772.35 |
| 04/01/21 | Electric - 01/08/21-02/09/21 | 94.07 | 0.00 | 14,866.42 |
| 04/01/21 | Fees - Utilities | 9.99 | 0.00 | 14,876.41 |
| 04/01/21 | Gas - 01/11/21-02/09/21 | 265.41 | 0.00 | 15,141.82 |
| 04/01/21 | Sewer - 01/20/21-02/18/21 | 44.70 | 0.00 | 15,186.52 |
| 04/01/21 | Water - 01/20/21-02/18/21 | 31.83 | 0.00 | 15,218.35 |
| 04/01/21 | Month to Month Rent (04/2021) | 228.83 | 0.00 | 15,447.18 |
| 04/01/21 | Rent (04/2021) | 1,695.00 | 0.00 | 17,142.18 |
| 04/01/21 | City Utility Charges - Trash Service (04/2021) | 18.40 | 0.00 | 17,160.58 |
| 04/06/21 | Late Fee | 75.00 | 0.00 | 17,235.58 |
| 05/01/21 | Electric - 02/09/21-03/09/21 | 89.87 | 0.00 | 17,325.45 |
| 05/01/21 | Fees - Utilities | 9.99 | 0.00 | 17,335.44 |
| 05/01/21 | Gas - 02/09/21-03/09/21 | 200.39 | 0.00 | 17,535.83 |
| 05/01/21 | Sewer - 02/19/21-03/17/21 | 31.75 | 0.00 | 17,567.58 |
| 05/01/21 | Water - 02/19/21-03/17/21 | 23.90 | 0.00 | 17,591.48 |
| 05/01/21 | Month to Month Rent (05/2021) | 228.83 | 0.00 | 17,820.31 |
| 05/01/21 | Rent (05/2021) | 1,695.00 | 0.00 | 19,515.31 |
| 05/01/21 | City Utility Charges - Trash Service (05/2021) | 18.40 | 0.00 | 19,533.71 |
| 05/06/21 | Late Fee | 75.00 | 0.00 | 19,608.71 |
| 06/01/21 | Electric - 03/09/21-04/08/21 | 85.29 | 0.00 | 19,694.00 |
| 06/01/21 | Fees - Utilities | 9.99 | 0.00 | 19,703.99 |
| 06/01/21 | Gas - 03/09/21-04/09/21 | 133.85 | 0.00 | 19,837.84 |
| 06/01/21 | Sewer - 03/18/21-04/19/21 | 54.19 | 0.00 | 19,892.03 |
| 06/01/21 | Water - 03/18/21-04/19/21 | 37.65 | 0.00 | 19,929.68 |
| 06/01/21 | City Utility Charges - Trash Service (06/2021) | 18.40 | 0.00 | 19,948.08 |

# Resident Ledger

| | |
|---|---|
| Date: | 12/06/2022 |
| Resident Code: | t0165898 |
| Property: | ga16178 |
| Unit: | GA16178 |
| Status: | |
| Rent: | $1,695.00 |
| Deposit: | |
| Move In Date: | 03/14/2020 |
| Move Out Date: | 12/31/1999 |
| Due Day: | 1 |
| Tel Num(Office): | |
| Tel Num(Home): | |

**Shatoya Hayes**
**4711 Plantation Mill Trail**
**Buford, GA 30519**

| Date | Description | Charges | Payments | Balance |
|---|---|---|---|---|
| 06/01/21 | Month to Month Rent (06/2021) | 228.83 | 0.00 | 20,176.91 |
| 06/01/21 | Rent (06/2021) | 1,695.00 | 0.00 | 21,871.91 |
| 06/06/21 | Late Fee | 75.00 | 0.00 | 21,946.91 |
| 07/01/21 | Electric - 04/08/21-05/10/21 | 90.11 | 0.00 | 22,037.02 |
| 07/01/21 | Fees - Utilities | 9.99 | 0.00 | 22,047.01 |
| 07/01/21 | Gas - 04/09/21-05/10/21 | 96.65 | 0.00 | 22,143.66 |
| 07/01/21 | Sewer - 04/20/21-05/19/21 | 43.84 | 0.00 | 22,187.50 |
| 07/01/21 | Water - 04/20/21-05/19/21 | 31.31 | 0.00 | 22,218.81 |
| 07/01/21 | City Utility Charges - Trash Service (07/2021) | 18.40 | 0.00 | 22,237.21 |
| 07/01/21 | Month to Month Rent (07/2021) | 228.83 | 0.00 | 22,466.04 |
| 07/01/21 | Rent (07/2021) | 1,695.00 | 0.00 | 24,161.04 |
| 07/06/21 | Late Fee | 75.00 | 0.00 | 24,236.04 |
| 08/01/21 | Electric - 05/10/21-06/08/21 | 130.10 | 0.00 | 24,366.14 |
| 08/01/21 | Fees - Utilities | 9.99 | 0.00 | 24,376.13 |
| 08/01/21 | Gas - 05/10/21-06/10/21 | 72.65 | 0.00 | 24,448.78 |
| 08/01/21 | Sewer - 05/20/21-06/18/21 | 49.88 | 0.00 | 24,498.66 |
| 08/01/21 | Water - 05/20/21-06/18/21 | 35.01 | 0.00 | 24,533.67 |
| 08/01/21 | City Utility Charges - Trash Service (08/2021) | 18.40 | 0.00 | 24,552.07 |
| 08/01/21 | Month to Month Rent (08/2021) | 228.83 | 0.00 | 24,780.90 |
| 08/01/21 | Rent (08/2021) | 1,695.00 | 0.00 | 26,475.90 |
| 08/06/21 | Late Fee | 75.00 | 0.00 | 26,550.90 |
| 09/01/21 | Electric - 06/08/21-07/09/21 | 162.49 | 0.00 | 26,713.39 |
| 09/01/21 | Fees - Utilities | 9.99 | 0.00 | 26,723.38 |
| 09/01/21 | Gas - 06/10/21-07/13/21 | 50.93 | 0.00 | 26,774.31 |
| 09/01/21 | Sewer - 06/19/21-07/22/21 | 50.74 | 0.00 | 26,825.05 |
| 09/01/21 | Water - 06/19/21-07/22/21 | 35.54 | 0.00 | 26,860.59 |
| 09/01/21 | Month to Month Rent (09/2021) | 228.83 | 0.00 | 27,089.42 |
| 09/01/21 | Rent (09/2021) | 1,695.00 | 0.00 | 28,784.42 |
| 09/01/21 | City Utility Charges - Trash Service (09/2021) | 18.40 | 0.00 | 28,802.82 |
| 09/03/21 | Gwinnett County Rental Assistance Payment | 0.00 | 28,903.00 | (100.18) |
| 09/06/21 | Late Fee | 75.00 | 0.00 | (25.18) |
| 10/01/21 | Electric - 07/09/21-08/10/21 | 180.83 | 0.00 | 155.65 |
| 10/01/21 | Fees - Utilities | 9.99 | 0.00 | 165.64 |
| 10/01/21 | Gas - 07/13/21-08/09/21 | 48.19 | 0.00 | 213.83 |
| 10/01/21 | Sewer - 07/23/21-08/26/21 | 59.37 | 0.00 | 273.20 |
| 10/01/21 | Water - 07/23/21-08/26/21 | 40.83 | 0.00 | 314.03 |
| 10/01/21 | Month to Month Rent (10/2021) | 228.83 | 0.00 | 542.86 |
| 10/01/21 | Rent (10/2021) | 1,695.00 | 0.00 | 2,237.86 |
| 10/01/21 | City Utility Charges - Trash Service (10/2021) | 18.40 | 0.00 | 2,256.26 |
| 10/06/21 | Late Fee | 75.00 | 0.00 | 2,331.26 |
| 10/26/21 | Chk# 114730541 - Credit Card On-Line Payment ; Mobile Web - Resident Services | 0.00 | 1,140.00 | 1,191.26 |
| 10/26/21 | Convenience Fee for Receipt Ctrl #9639831 | 40.00 | 0.00 | 1,231.26 |
| 11/01/21 | Electric - 08/10/21-09/09/21 | 145.26 | 0.00 | 1,376.52 |
| 11/01/21 | Fees - Utilities | 9.99 | 0.00 | 1,386.51 |

# Resident Ledger

| | |
|---|---|
| Date: | 12/06/2022 |
| Resident Code: | t0165898 |
| Property: | ga16178 |
| Unit: | GA16178 |
| Status: | |
| Rent: | $1,695.00 |
| Deposit: | |
| Move In Date: | 03/14/2020 |
| Move Out Date: | 12/31/1999 |
| Due Day: | 1 |
| Tel Num(Office): | |
| Tel Num(Home): | |

**Shatoya Hayes**
**4711 Plantation Mill Trail**
**Buford, GA 30519**

| Date | Description | Charges | Payments | Balance |
|---|---|---|---|---|
| 11/01/21 | Gas - 08/09/21-09/13/21 | 54.59 | 0.00 | 1,441.10 |
| 11/01/21 | Sewer - 08/27/21-09/21/21 | 45.56 | 0.00 | 1,486.66 |
| 11/01/21 | Water - 08/27/21-09/21/21 | 32.36 | 0.00 | 1,519.02 |
| 11/01/21 | City Utility Charges - Trash Service (11/2021) | 18.40 | 0.00 | 1,537.42 |
| 11/01/21 | Month to Month Rent (11/2021) | 228.83 | 0.00 | 1,766.25 |
| 11/01/21 | Rent (11/2021) | 1,695.00 | 0.00 | 3,461.25 |
| 11/06/21 | Late Fee | 75.00 | 0.00 | 3,536.25 |
| 12/01/21 | Electric - 09/09/21-10/10/21 | 100.71 | 0.00 | 3,636.96 |
| 12/01/21 | Fees - Utilities | 9.99 | 0.00 | 3,646.95 |
| 12/01/21 | Gas - 09/13/21-10/08/21 | 57.80 | 0.00 | 3,704.75 |
| 12/01/21 | Sewer - 09/22/21-10/15/21 | 22.26 | 0.00 | 3,727.01 |
| 12/01/21 | Water - 09/22/21-10/15/21 | 18.08 | 0.00 | 3,745.09 |
| 12/01/21 | Month to Month Rent (12/2021) | 228.83 | 0.00 | 3,973.92 |
| 12/01/21 | Rent (12/2021) | 1,695.00 | 0.00 | 5,668.92 |
| 12/01/21 | City Utility Charges - Trash Service (12/2021) | 18.40 | 0.00 | 5,687.32 |
| 12/06/21 | Late Fee | 75.00 | 0.00 | 5,762.32 |
| 01/01/22 | Electric - 10/10/21-11/09/21 | 71.77 | 0.00 | 5,834.09 |
| 01/01/22 | Fees - Utilities | 9.99 | 0.00 | 5,844.08 |
| 01/01/22 | Gas - 10/08/21-11/09/21 | 127.70 | 0.00 | 5,971.78 |
| 01/01/22 | Sewer - 10/16/21-11/16/21 | 45.56 | 0.00 | 6,017.34 |
| 01/01/22 | Water - 10/16/21-11/16/21 | 32.36 | 0.00 | 6,049.70 |
| 01/01/22 | Month to Month Rent (01/2022) | 228.83 | 0.00 | 6,278.53 |
| 01/01/22 | Rent (01/2022) | 1,695.00 | 0.00 | 7,973.53 |
| 01/01/22 | City Utility Charges - Trash Service (01/2022) | 18.40 | 0.00 | 7,991.93 |
| 01/06/22 | Late Fee | 75.00 | 0.00 | 8,066.93 |
| 02/01/22 | Electric - 11/09/21-12/08/21 | 74.62 | 0.00 | 8,141.55 |
| 02/01/22 | Fees - Utilities | 9.99 | 0.00 | 8,151.54 |
| 02/01/22 | Gas - 11/09/21-12/09/21 | 215.84 | 0.00 | 8,367.38 |
| 02/01/22 | Sewer - 11/17/21-12/17/21 | 35.21 | 0.00 | 8,402.59 |
| 02/01/22 | Water - 11/17/21-12/17/21 | 26.02 | 0.00 | 8,428.61 |
| 02/01/22 | City Utility Charges - Trash Service (02/2022) | 18.40 | 0.00 | 8,447.01 |
| 02/01/22 | Month to Month Rent (02/2022) | 228.83 | 0.00 | 8,675.84 |
| 02/01/22 | Rent (02/2022) | 1,695.00 | 0.00 | 10,370.84 |
| 02/06/22 | Late Fee | 75.00 | 0.00 | 10,445.84 |
| 02/09/22 | Gwinnett County Assistance Payment | 0.00 | 8,066.93 | 2,378.91 |
| 03/01/22 | Electric - 12/08/21-01/10/22 | 96.79 | 0.00 | 2,475.70 |
| 03/01/22 | Fees - Utilities | 9.99 | 0.00 | 2,485.69 |
| 03/01/22 | Gas - 12/09/21-01/11/22 | 227.62 | 0.00 | 2,713.31 |
| 03/01/22 | Sewer - 12/18/21-01/20/22 | 36.93 | 0.00 | 2,750.24 |
| 03/01/22 | Water - 12/18/21-01/20/22 | 27.07 | 0.00 | 2,777.31 |
| 03/01/22 | Month to Month Rent (03/2022) | 228.83 | 0.00 | 3,006.14 |
| 03/01/22 | Rent (03/2022) | 1,695.00 | 0.00 | 4,701.14 |
| 03/01/22 | City Utility Charges - Trash Service (03/2022) | 18.40 | 0.00 | 4,719.54 |
| 03/06/22 | Late Fee | 75.00 | 0.00 | 4,794.54 |
| 04/01/22 | Electric - 01/10/22-02/09/22 | 87.28 | 0.00 | 4,881.82 |

# Resident Ledger

| | |
|---|---|
| Date: | 12/06/2022 |
| Resident Code: | t0165898 |
| Property: | ga16178 |
| Unit: | GA16178 |
| Status: | |
| Rent: | $1,695.00 |
| Deposit: | |
| Move In Date: | 03/14/2020 |
| Move Out Date: | 12/31/1999 |
| Due Day: | 1 |
| Tel Num(Office): | |
| Tel Num(Home): | |

**Shatoya Hayes**
**4711 Plantation Mill Trail**
**Buford, GA 30519**

| Date | Description | Charges | Payments | Balance |
|---|---|---|---|---|
| 04/01/22 | Fees - Utilities | 9.99 | 0.00 | 4,891.81 |
| 04/01/22 | Gas - 01/11/22-02/08/22 | 298.96 | 0.00 | 5,190.77 |
| 04/01/22 | Sewer - 01/21/22-02/16/22 | 32.62 | 0.00 | 5,223.39 |
| 04/01/22 | Water - 01/21/22-02/16/22 | 24.43 | 0.00 | 5,247.82 |
| 04/01/22 | Month to Month Rent (04/2022) | 228.83 | 0.00 | 5,476.65 |
| 04/01/22 | Rent (04/2022) | 1,695.00 | 0.00 | 7,171.65 |
| 04/01/22 | City Utility Charges - Trash Service (04/2022) | 18.40 | 0.00 | 7,190.05 |
| 04/06/22 | Late Fee | 75.00 | 0.00 | 7,265.05 |
| 04/29/22 | Chk# 40193594474675 - :CHECKscan Payment | 0.00 | 1,000.00 | 6,265.05 |
| 04/29/22 | Chk# 40193594474666 - :CHECKscan Payment | 0.00 | 1,000.00 | 5,265.05 |
| 04/29/22 | Chk# 40193756876561 - :CHECKscan Payment | 0.00 | 1,000.00 | 4,265.05 |
| 04/29/22 | Chk# 40193721555098 - :CHECKscan Payment | 0.00 | 1,000.00 | 3,265.05 |
| 04/29/22 | Chk# 40193594474657 - :CHECKscan Payment | 0.00 | 1,000.00 | 2,265.05 |
| 04/29/22 | Chk# 40193594474684 - :CHECKscan Payment | 0.00 | 1,000.00 | 1,265.05 |
| 04/29/22 | Chk# 40220033173145 - :CHECKscan Payment | 0.00 | 765.05 | 500.00 |
| 04/29/22 | Chk# 40193721555107 - :CHECKscan Payment | 0.00 | 500.00 | 0.00 |
| 05/01/22 | Electric - 02/09/22-03/09/22 | 78.42 | 0.00 | 78.42 |
| 05/01/22 | Fees - Utilities | 9.99 | 0.00 | 88.41 |
| 05/01/22 | Gas - 02/08/22-03/09/22 | 158.87 | 0.00 | 247.28 |
| 05/01/22 | Sewer - 02/17/22-03/16/22 | 32.62 | 0.00 | 279.90 |
| 05/01/22 | Water - 02/17/22-03/16/22 | 24.43 | 0.00 | 304.33 |
| 05/01/22 | Month to Month Rent (05/2022) | 228.83 | 0.00 | 533.16 |
| 05/01/22 | Rent (05/2022) | 1,695.00 | 0.00 | 2,228.16 |
| 05/01/22 | City Utility Charges - Trash Service (05/2022) | 18.40 | 0.00 | 2,246.56 |
| 05/06/22 | Late Fee | 75.00 | 0.00 | 2,321.56 |
| 06/01/22 | Electric - 03/09/22-04/08/22 | 85.89 | 0.00 | 2,407.45 |
| 06/01/22 | Fees - Utilities | 9.99 | 0.00 | 2,417.44 |
| 06/01/22 | Gas - 03/09/22-04/08/22 | 163.75 | 0.00 | 2,581.19 |
| 06/01/22 | Sewer - 03/17/22-04/18/22 | 42.11 | 0.00 | 2,623.30 |
| 06/01/22 | Water - 03/17/22-04/18/22 | 30.25 | 0.00 | 2,653.55 |
| 06/01/22 | Month to Month Rent (06/2022) | 228.83 | 0.00 | 2,882.38 |
| 06/01/22 | Rent (06/2022) | 1,695.00 | 0.00 | 4,577.38 |
| 06/01/22 | City Utility Charges - Trash Service (06/2022) | 18.40 | 0.00 | 4,595.78 |
| 06/06/22 | Late Fee | 75.00 | 0.00 | 4,670.78 |
| 06/30/22 | Chk# 454581003 - :CHECKscan Payment | 0.00 | 4,670.78 | 0.00 |
| 07/01/22 | Electric - 04/08/22-05/10/22 | 85.05 | 0.00 | 85.05 |
| 07/01/22 | Fees - Utilities | 9.99 | 0.00 | 95.04 |
| 07/01/22 | Gas - 04/08/22-05/10/22 | 106.19 | 0.00 | 201.23 |
| 07/01/22 | Sewer - 04/19/22-05/18/22 | 39.52 | 0.00 | 240.75 |
| 07/01/22 | Water - 04/19/22-05/18/22 | 28.66 | 0.00 | 269.41 |
| 07/01/22 | Month to Month Rent (07/2022) | 228.83 | 0.00 | 498.24 |
| 07/01/22 | Rent (07/2022) | 1,695.00 | 0.00 | 2,193.24 |
| 07/01/22 | City Utility Charges - Trash Service (07/2022) | 18.40 | 0.00 | 2,211.64 |
| 07/06/22 | Late Fee | 75.00 | 0.00 | 2,286.64 |
| 08/01/22 | Electric - 05/10/22-06/09/22 | 127.06 | 0.00 | 2,413.70 |

# Resident Ledger

|  |  |
|---|---|
| Date: | 12/06/2022 |
| Resident Code: | t0165898 |
| Property: | ga16178 |
| Unit: | GA16178 |
| Status: |  |
| Rent: | $1,695.00 |
| Deposit: |  |
| Move In Date: | 03/14/2020 |
| Move Out Date: | 12/31/1999 |
| Due Day: | 1 |
| Tel Num(Office): |  |
| Tel Num(Home): |  |

**Shatoya Hayes**
**4711 Plantation Mill Trail**
**Buford, GA 30519**

| Date | Description | Charges | Payments | Balance |
|---|---|---|---|---|
| 08/01/22 | Fees - Utilities | 9.99 | 0.00 | 2,423.69 |
| 08/01/22 | Gas - 05/10/22-06/10/22 | 72.34 | 0.00 | 2,496.03 |
| 08/01/22 | Sewer - 05/19/22-06/20/22 | 45.56 | 0.00 | 2,541.59 |
| 08/01/22 | Water - 05/19/22-06/20/22 | 32.36 | 0.00 | 2,573.95 |
| 08/01/22 | City Utility Charges - Trash Service (08/2022) | 18.40 | 0.00 | 2,592.35 |
| 08/01/22 | Month to Month Rent (08/2022) | 228.83 | 0.00 | 2,821.18 |
| 08/01/22 | Rent (08/2022) | 1,695.00 | 0.00 | 4,516.18 |
| 08/06/22 | Late Fee | 75.00 | 0.00 | 4,591.18 |
| 09/01/22 | Electric - 06/09/22-07/11/22 | 190.02 | 0.00 | 4,781.20 |
| 09/01/22 | Fees - Utilities | 9.99 | 0.00 | 4,791.19 |
| 09/01/22 | Gas - 06/10/22-07/11/22 | 43.19 | 0.00 | 4,834.38 |
| 09/01/22 | Sewer - 06/21/22-07/20/22 | 34.34 | 0.00 | 4,868.72 |
| 09/01/22 | Water - 06/21/22-07/20/22 | 25.49 | 0.00 | 4,894.21 |
| 09/01/22 | Month to Month Rent (09/2022) | 228.83 | 0.00 | 5,123.04 |
| 09/01/22 | Rent (09/2022) | 1,695.00 | 0.00 | 6,818.04 |
| 09/01/22 | City Utility Charges - Trash Service (09/2022) | 18.40 | 0.00 | 6,836.44 |
| 09/06/22 | Late Fee | 75.00 | 0.00 | 6,911.44 |
| 10/01/22 | Electric - 07/11/22-08/08/22 | 181.61 | 0.00 | 7,093.05 |
| 10/01/22 | Fees - Utilities | 9.99 | 0.00 | 7,103.04 |
| 10/01/22 | Gas - 07/11/22-08/10/22 | 50.87 | 0.00 | 7,153.91 |
| 10/01/22 | Sewer - 07/21/22-08/17/22 | 34.34 | 0.00 | 7,188.25 |
| 10/01/22 | Water - 07/21/22-08/17/22 | 25.49 | 0.00 | 7,213.74 |
| 10/01/22 | Month to Month Rent (10/2022) | 228.83 | 0.00 | 7,442.57 |
| 10/01/22 | Rent (10/2022) | 1,695.00 | 0.00 | 9,137.57 |
| 10/01/22 | City Utility Charges - Trash Service (10/2022) | 18.40 | 0.00 | 9,155.97 |
| 10/06/22 | Late Fee | 75.00 | 0.00 | 9,230.97 |
| 11/01/22 | Electric - 08/08/22-09/08/22 | 168.11 | 0.00 | 9,399.08 |
| 11/01/22 | Fees - Utilities | 9.99 | 0.00 | 9,409.07 |
| 11/01/22 | Gas - 08/10/22-09/12/22 | 58.02 | 0.00 | 9,467.09 |
| 11/01/22 | Sewer - 08/18/22-09/16/22 | 48.15 | 0.00 | 9,515.24 |
| 11/01/22 | Water - 08/18/22-09/16/22 | 33.95 | 0.00 | 9,549.19 |
| 11/01/22 | City Utility Charges - Trash Service (11/2022) | 18.40 | 0.00 | 9,567.59 |
| 11/01/22 | Month to Month Rent (11/2022) | 228.83 | 0.00 | 9,796.42 |
| 11/01/22 | Rent (11/2022) | 1,695.00 | 0.00 | 11,491.42 |
| 11/06/22 | Late Fee | 75.00 | 0.00 | 11,566.42 |
| 12/01/22 | Electric - 09/08/22-10/09/22 | 143.52 | 0.00 | 11,709.94 |
| 12/01/22 | Fees - Utilities | 9.99 | 0.00 | 11,719.93 |
| 12/01/22 | Gas - 09/12/22-10/11/22 | 71.57 | 0.00 | 11,791.50 |
| 12/01/22 | Sewer - 09/17/22-10/17/22 | 42.11 | 0.00 | 11,833.61 |
| 12/01/22 | Water - 09/17/22-10/17/22 | 30.25 | 0.00 | 11,863.86 |
| 12/01/22 | Month to Month Rent (12/2022) | 228.83 | 0.00 | 12,092.69 |
| 12/01/22 | Rent (12/2022) | 1,695.00 | 0.00 | 13,787.69 |

**Resident Ledger**

| | |
|---|---|
| | Date: 12/06/2022 |
| | Resident Code: t0165898 |
| | Property: ga16178 |
| | Unit: GA16178 |
| **Shatoya Hayes** | Status: |
| **4711 Plantation Mill Trail** | Rent: $1,695.00 |
| **Buford, GA 30519** | Deposit: |
| | Move In Date: 03/14/2020 |
| | Move Out Date: 12/31/1999 |
| | Due Day: 1 |
| | Tel Num(Office): |
| | Tel Num(Home): |

| Date | Description | Charges | Payments | Balance |
|---|---|---|---|---|
| 12/01/22 | City Utility Charges - Trash Service (12/2022) | 18.40 | 0.00 | 13,806.09 |

| Current | 30 Days | 60 Days | Over 90 | Current Owed |
|---|---|---|---|---|
| 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |